**UNITED STATES of America,**
**Appellee,**

v.

**Robert McKEE, Appellant.**

**No. 718, Docket 72–1263.**

United States Court of Appeals,
Second Circuit.

Argued April 5, 1972.

Decided June 7, 1972.

Gerald Alch, Boston, Mass. (F. Lee Bailey, Boston, Mass., Stephan Peskin, New York City, of counsel), for appellant.

John D. Gordan III, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., for Southern District of New York, Thomas J. Fitzpatrick, John W. Nields, Jr., Asst. U. S. Attys., New York City, (of counsel), for appellee.

Before CLARK, Associate Justice,*, LUMBARD and KAUFMAN, Circuit Judges.

Mr. Justice CLARK:

Robert McKee appeals from his conviction by a jury of conspiracy to violate the Travel Act, 18 U.S.C. § 371, and of two substantive counts thereunder, 18 U.S.C. § 1952. The evidence indicated that McKee and two other Councilmen of the City of Johnstown, Pennsylvania, had accepted bribes of $5000 each from Teleprompter Corporation and Irving Kahn, its President, to award the exclusive rights to operate cable television in Johnstown to Teleprompter. The arrangement was that the payments would be channelled through the Mayor's son who lived in New York City.

Originally all of the Councilmen were represented by the same counsel but later when the Mayor and Councilman Deardorff pleaded guilty the court ruled that there was a conflict of interest and McKee then employed F. Lee Bailey, as his counsel. On trial McKee claimed on direct examination that his former counsel was ill-prepared, talked behind McKee's back to the prosecutor, permitted him to be lured into the Grand Jury room alone where the prosecutor put words into his mouth and then, in league with the prosecutor, tried to get him to plead guilty when his counsel knew he was

* United States Supreme Court, retired, sitting by designation.

innocent. He further testified that he believed the payment to be a campaign contribution and not a bribe. He contended that he did not so advise the Grand Jury on the advice of his former counsel who had told him that the prosecution was primarily interested in prosecuting Kahn and would not pursue him if he was helpful. Finally, he told the jury about the fee that he had paid his former counsel and that Mr. Bailey required a much higher one. On cross-examination the prosecutor sought to dispel these claims. He asked McKee: "Isn't it a fact that you thought you had a better chance of avoiding the consequences of your criminal act if you hired Mr. Bailey?" The defense objected and the jury was given precautionary instructions.[1]

■ 1. McKee claims that the prosecutor was deliberately trying to prejudice the jury. While the form of the question left much to be desired we have concluded that any prejudice was cured by the later instruction. Moreover, Mr. Bailey himself requested a charge that the jury not watch a certain television show that night because he [Bailey] was appearing on it and the jury was so instructed. We, therefore, conclude that the trial court did not abuse its discretion in denying a mistrial.

■ 2. McKee also claims error in the trial court's refusal to give a supplementary charge to the jury. As part of the Government's case, U. S. Assistant Attorney Morvillo testified that, before any indictment was returned McKee had offered to plead guilty to violation of the Travel Act. After retiring for deliberation, the jury asked that this portion of the testimony be read back to them. At this time McKee requested that the jury be instructed as follows:

"I instruct you that inasmuch as the defendant had no indictment before him to read at the time he talked with Mr. Morvillo, you may not consider the defendant's alleged offer to plead guilty to an indictment to be returned in the future as any evidence of McKee's knowledge that the money paid to him travelled through interstate commerce or the mails."

This instruction was properly refused on two grounds. First, Mr. Morvillo testified that he told appellant:

"that the only agreement which would be acceptable to the government . . . was an agreement whereby they would have to plead to one.count of an indictment which would be filed against them charging them with conspiracy and substantive counts of

1. The instructions were as follows:
"The Court: Now, ladies and gentlemen, you probably recall before the recess there was a question put to the defendant witness, Mr. McKee, by the United States attorney to the effect that 'Isn't it a fact that you thought that you had a better chance of avoiding the consequences of your illegal acts by hiring Mr. Bailey?'
"That was preceded by a question, 'Were you dissatisfied with your prior attorney, Mr. Lawler?' I believe, or a question to that effect.
"Now, this last question has been withdrawn and I want to give you instructions at this time relating to that question.
"First of all, the question seems to imply that Mr. McKee is guilty. The first instruction is that you are not to infer from that question that Mr. McKee is guilty; that is no evidence of Mr.

McKee's guilt. A question of that kind is not evidence of his guilt.
"Now, I further instruct you that the Court ruled prior to Mr. McKee's trial that he was represented by Mr. Lawler who at that time represented Mr. Deardorff, and, as you know from Mr. Deardorff's testimony, he has pled guilty to Count 1.
"Now, in view of that the Court ruled that there was a conflict of interest and that Mr. Lawler could not represent both Mr. Deardorff and Mr. McKee, and it was at that time that Mr. McKee then retained other counsel.
"Now, Mr. McKee retained Mr. Bailey. Now, Mr. McKee I instruct you, had every right to retain counsel of his own choosing, and you are not to infer from his selecting Mr. Bailey that he did so because he is guilty; that is no evidence of his guilt, either."

*travel in interstate commerce* to facilitate a bribe."

Thus, it is quite clear that the jury, after having the testimony read to them, would be free to infer knowledge of interstate travel. Secondly, McKee should have requested a proper limiting instruction either before or when the jury was originally charged. Therefore, the trial judge correctly rejected the request as improper and untimely.

■■■ 3. Finally, McKee claims that the trial court erred in excluding certain grand jury testimony given by Irving Kahn as a declaration against interest. At the trial, it was established that Kahn would refuse to testify on the basis of the Fifth Amendment. McKee then sought to introduce grand jury testimony in which Kahn testified that he had made the payment of $15,000 only because Mayor Tompkins had threatened him with certain loss of Teleprompter's contract rights if he failed to pay. In the course of his testimony on this point, Kahn stated that his conversations were with the Mayor alone and did not include McKee.

McKee says that this statement was against penal and pecuniary interest and was therefore admissible as an exception to the hearsay rule to show that he was not present when the bribe was arranged.

We disagree that the relevant portion of this statement was against Kahn's interest and therefore do not decide if it was otherwise admissible.[2] Since the testimony that McKee was not present was not against Kahn's interest, it did not come within the exception to the hearsay rule and was properly excluded. United States v. Seyfried, 435 F.2d 696 (7 Cir. 1970); cert. denied, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971). See C. McCormick, Law of Evidence § 279, at 677 (2d Ed. 1972).

Affirmed.

2. The Government argues that the statement was actually exculpatory since Kahn was seeking to establish extortion on the part of the Mayor.