UNITED STATES of America,
Appellee,

v.

Peter E. LaFROSCIA, Defendant-
Appellant.

No. 87, Docket 73-1753.

United States Court of Appeals,
Second Circuit.

Argued Sept. 10, 1973.

Decided Sept. 25, 1973.

See also, D.C., 354 F.Supp. 1338.

Peter L. Truebner, Asst. U. S. Atty.,
(Paul J. Curran, U. S. Atty. S. D. N. Y.,
and John D. Gordan, III, Asst. U. S.
Atty., of counsel), for appellee.

Paul K. Rooney, New York City (Elliot L. Evans, New York City, of counsel), for defendant-appellant.

Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.

PER CURIAM:

Peter Edward LaFroscia appeals from a judgment of the District Court for the Southern District of New York, convicting him, after a verdict, of importing some 78½ kilograms of marijuana in violation of 21 U.S.C. § 952(a), and of bringing and possessing on board the M. S. Michaelangelo the same quantity of marijuana in violation of 21 U.S.C. § 955.

LaFroscia arrived in New York on June 22, 1972, after a week's voyage on the *Michaelangelo* from Algeciras, Spain. After leaving the ship and going through Customs, he waited on the pier for the unloading of his Volkswagen camper. When the camper arrived on the pier, Customs Patrol Officers Heaton and Ruggiero searched it and found some 54½ kilograms of marijuana in the gasoline tank cavity. The tank, they discovered, had been truncated and welded so that it was only a third of its normal size, and the marijuana had been secreted between the altered tank and the fire wall. Some three months later Customs agents who were repairing the car in the Customs garage found another 24 kilograms of marijuana hidden between the roof and the ceiling. LaFroscia was arrested promptly after the initial search, and various papers were removed from his person.

■ LaFroscia properly does not contest the validity of the Customs search; apart from the suspicions generated by his conduct on the pier, it was Customs policy at the time to search all cars arriving at New York from a foreign origin. This is plainly lawful. See Almeida-Sanchez v. United States, 413 U.S. 266, 272, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); United States v. Thirty-seven Photographs, 402 U.S. 363, 376, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); Henderson v. United States, 390 F.2d 805, 808 (9 Cir. 1967); United States v. Summerfield, 421 F.2d 684, 685 (9 Cir. 1970). He likewise does not question that discovery of the large quantity of marijuana in the gasoline tank afforded probable cause for his arrest and the incidental search of his person. Apart from requesting us to reconsider United States v. Kiffer, 477 F.2d 349 (2 Cir.), petition for cert. filed, 42 U.S.L.W. 3001 (U.S. June 21, 1973) (No. 72–1730), sustaining the classification of marijuana as a controlled substance in Schedule I of the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. § 801 et seq., which we decline to do, he asks us to hold that the evidence was insufficient to permit submission of the issue of guilty knowledge to the jury and that a question asked by the prosecutor, to which the judge sustained prompt defense objection, required the more drastic remedy of declaration of a mistrial.

■ The claim of insufficiency of the evidence is so insubstantial that we would have affirmed the conviction from the bench if it had stood alone. LaFroscia argues that his conduct on the pier, before and after the seizure, did not depart sufficiently from the norm to warrant an inference of guilty knowledge. We need not debate this, for that evidence, although significant, was only part of the total, which included LaFroscia's own testimony. Taken as a whole, the evidence almost compelled a finding of guilty knowledge. LaFroscia's bizzare itinerary in Europe included three trips between Germany and Torremolinas, Spain, within less than six weeks, the last being after Mrs. LaFroscia had returned to the United States to care for a sick baby. He failed to provide any plausible explanation how such a large quantity of marijuana could have gotten into the Volkswagen without his knowledge.[1] Despite

---

1. LaFroscia testified that he drove the camper from Torremolinas to Algeciras on the morning that he boarded the *Michaelangelo*, and that when he left, the gas gauge showed

his small means, he spent $405 to ship the damaged Volkswagen and $380 to transport himself on the *Michaelangelo*, even though he held an unused portion of a round trip transatlantic airline ticket worth only some $100. Finally, while he was waiting on the pier, LaFroscia told the Customs agents that his wife had been injured in the accident that had damaged the camper; in fact, the accident occurred after she had returned to this country, and while he was en route to Torremolinas.

The claim that Judge Metzner should have declared a mistrial demands more serious consideration. Among the papers found on LaFroscia at the time of his arrest was a business card on the reverse of which had been written the names of Paul Rooney, Esq., who was later to be his trial counsel, and of two other lawyers, apparently associated with Mr. Rooney; their office address; and their telephone number. In cross-examination the prosecution asked:

"Q. Among the papers you had on June 22, 1972, was a card with the name, address and telephone number of a criminal law firm headed by Paul Rooney; is that not right?"

Defense counsel objected and moved for a mistrial. Judge Metzner sustained the objection and instructed the jury to disregard the question and ignore any inference of guilt that might be drawn from it, but he denied the motion for a mistrial.

 If the question had been properly framed and the judge, after weighing the probative value of the evidence against its possible prejudicial effect, had decided to allow it, we would have seen no reason to interfere. The card passed the rather low test of relevancy, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Proposed Federal Rules of Evidence 401; see McCormick, Evidence § 185, at 437 (Cleary ed. 1972). There would be little reason for LaFroscia, an air conditioning mechanic in Brooklyn, to carry, on what he characterized as a belated honeymoon in Europe, a card with the names, address and telephone number of three lawyers unless he anticipated needing to communicate with them promptly on his return. To be sure, the card might simply have remained on his person after having served some previous use unconnected with the commission of crime; but, particularly since he had chosen to take the stand, it would have been easy for him to offer explanation, if such there was. The vice of the question lay in the prosecutor's using the invidious term "criminal law firm" and conveying the impression that the card was the firm's whereas, as the prosecutor knew, it was LaFroscia's. However, the judge, not permitting a reformulation, sustained the objection and directed the jury to ignore any inferences from the question. It was unnecessary to do more, see United States v. McKee, 462 F.2d 275, 277 (2 Cir. 1972).

Affirmed.

---

the tank to be one-third full. In addition, he testified that he did not refuel at any point along the way. However, the Customs agents who examined the car after LaFroscia's arrest discovered that the gas gauge did not work at all and that the altered gas tank would take only about a gallon of gas. If, as LaFroscia implausibly contends, the tank had been altered without his knowledge prior to his sailing on the *Michaelangelo*, it is highly unlikely that he could have made the roughly 80-mile journey from Torremolinas to Algeciras without refueling or at least noticing the reduced capacity of the tank.