Frederick L. TOEPLEMAN, Appellant and Cross-Appellee,

v.

UNITED STATES of America, Appellee and Cross-Appellant.

CATO BROS., INCORPORATED, Wilfred R. Cato, William R. Cato, and Magie L. Dunn (nee: Magie L. Stone), Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 7321, 7333.

United States Court of Appeals Fourth Circuit.

Argued as to No. 7333, and Submitted as to No. 7321, Oct. 17, 1958.

Decided Jan. 23, 1959.

698

Charles W. Laughlin and A. C. Epps, Richmond, Va. (Christian, Barton, Parker & Boyd, Richmond, Va., on brief) for appellants in No. 7333.

John G. Laughlin, Atty., Dept. of Justice, Washington, D. C., for the U. S. in both cases.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

ALBERT V. BRYAN, District Judge.

The Fifth Amendment's due process clause, contend the appellants, bars recovery of the $164,000 and $60,000 claimed in these two cases, respectively, as the aggregate of forfeitures under the False Claims Act,* because of the peculiar circumstances here. This statute exacts $2000, aside from damages, from "every person who makes * * * any claim * * * against the Government of the United States knowing such claim to be false * * * or fraudulent". The circumstances stressed are the affirmative finding of the trial court in one case of no "legally recoverable damages" to the Government and the disallowance in the other also of all damages.

Conceding the Act in the letter to be valid, the appellants contend that the imposition of such a plurality of forfeitures, 30 in the Cato case and 82 in Toepleman, in the absence of any commensurate damages, proved or unproved, is unconstitutional. If the forfeiture is not in some measure referable to the damages suffered, the argument is, then there is no lawful basis for the taking which the forfeiture makes of the defendant. Further, if the Congress may fix the forfeiture without relation to damages suffered, the appellants urge, the Congress could mulct a defendant so severely that it would be the equivalent of punishing him criminally, regardless of how the amercement is denominated; yet in its enforcement the defendant would be without the safeguards of a criminal trial. The underlying question, thus, is how far may Federal legislation go in levying a pecuniary civil sanction.

The $60,000 forfeitures in the Cato case were based on the forwarding of 30 letters by the defendant to the Commodity Credit Corporation, each containing at least one fraudulent promissory note for a cotton producer's loan. In Toepleman, the forfeitures of $164,000 were founded on 82 fraudulent cotton notes likewise presented to the Commodity Credit Corporation. The early history of both cases appears in United States v. McNinch, 4 Cir., 242 F.2d 359 and 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001.

* 31 U.S.C.A. § 231; however, in reference the original of this statute, R.S. § 3490, should be used, and, for the statute therein adopted, R.S. § 5438 should be used instead of the present 18 U.S.C.A. § 287, because the former incorporated the latter as it read at the date of the former's original enactment in 1873.

The Supreme Court has upheld forfeitures under the Act, the appellants readily admit, and has declared them to be civil in nature. United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443; Rex Trailer Inc. v. United States, 1956, 350 U.S. 148, 76 S.Ct. 219, 222, 100 L.Ed. 149. But the validity accorded the forfeiture was dependent in these decisions, the appellants insist, upon a showing both of an actual suffering of damages by the United States and a fair ratio of forfeiture to damages—a loss and reasonable indemnity. The issue now according to the appellants is the question suggested, but left open, in the Rex Trailer opinion by its restricted, ad hoc conclusion that, "On this record it cannot be said that the measure of recovery fixed by Congress in the Act is so unreasonable or excessive that it transformed what was clearly intended as a civil remedy into a criminal penalty".

■■ The ready response to the appellants' argument is that in neither case here does the trial court find that there was no injury or damages sustained by the Government. The strongest finding —"The plaintiff has not suffered any legally recoverable damages due to the action of the defendants."—does not in a fair reading purport to exclude all injury and damages. Clearly, the judge meant no more than that no calculable damage was shown. But, surely, no proof is required to convince one that to the Government a false claim, successful or not, is always costly. Just as surely, against this loss the Government may protect itself, though the damage be not explicitly or nicely ascertainable.

The Act seeks to reimburse the Government for just such losses. For a single false claim $2000 would not seem exorbitant. Furthermore, even when multiplied by a plurality of impostures, it still would not appear unreasonable when balanced against the expense of the constant Treasury vigil they necessitate. Obviously, the Congress in fixing this sum as the amount of the forfeiture cannot be justly accused of taking it

without cause or due process. The statute merely draws the halter on those two, hand in hand imposters, damnum absque injuria and injuria absque damnum.

■ Reasonable indemnity, however, is not the only measure of the forfeiture's validity. Without converting it into a criminal penalty, a statutory forfeiture of money has always been demandable of a wrongdoer by civil process though its purpose and effect be punishment. The opinion in the Hess case accepts the civil forfeiture as a common juristic discipline. 317 U.S. 537, 549–551, 63 S.Ct. 379, and concurring opinion, 317 U.S. at page 554, 63 S.Ct. at page 389. Indeed, it is exampled in many of the Acts of Congress: 8 U.S.C.A. §§ 1321, 1322 and 1323, penalties imposed upon anyone illegally landing aliens; 26 U.S.C.A. (I.R. C.1954) § 6653, fraud penalty of 50% for income tax underpayment; 45 U.S.C.A. § 73, pecuniary forfeiture for failure of carrier to unload livestock at intervals. These sanctions are so far civil in character that the trial, upon their enforcement, includes such civil attributes as a directed verdict for the Government and, for recovery, proof by a preponderance of the evidence instead of beyond a reasonable doubt. Helvering v. Mitchell, 1938, 303 U.S. 391, 400, note 3, 402, 58 S.Ct. 630, 82 L.Ed. 917; United States v. Grannis, 4 Cir., 1949, 172 F.2d 507, certiorari denied 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727.

Cognizance of civil punishments is found, too, in the procedural provisions of the United States Code Annotated. Thus, inter alia, in 28 U.S.C.A. we note: § 1355, jurisdiction of "action or proceeding for the recovery or enforcement of any * * * forfeiture, pecuniary or otherwise"; § 1395, venue of "A civil proceeding for the recovery of a pecuniary * * * forfeiture"; § 1918, costs on any order for a "civil fine or forfeiture of property"; Chapter 163, §§ 2461 and 2462, mode of recovery of "civil fine, penalty or pecuniary forfeiture".

Many of the States have adopted similar statutes, sometimes for the benefit

of the injured person and at others in the public interest. True, when their aim has been solely to prevent or heal injury, some State enactments have occasionally been struck down as over reaching their purpose. Chicago & N. W. Ry. Co. v. Nye Schneider-Fowler Co., 1922, 260 U.S. 35, 40ff, 43 S.Ct. 55, 67 L.Ed. 115. But, when fraud has been their target, we know of no vitiating decision.

The statutory monetary forfeiture, for the use of either the injured sovereign or the injured citizen, is often likened to punitive damages recoverable in a civil action for a willful wrong. This likeness, as well as their dissimilarity to a criminal fine, is marked, too, by an immunity from imprisonment for their non-payment.

■ Of course, punitive damages are held in check by the judgment of a jury or a court, and, to be sure, there is no such rein in the determination of the amount of a statutory forfeiture. On the other hand, the quantum of a civil punishment, as is a criminal penalty, is fixed by the legislature alone. But, we know, an unjustly oppressive criminal penalty is subject to judicial review under the Eighth Amendment. So, while the Eighth Amendment has generally been thought to apply only to criminal cases; N. A. Woodworth Co. v. Kavanagh, D.C., 102 F.Supp. 9, 13, affirmed 6 Cir., 1953, 202 F.2d 154; United States v. Stangland, 7 Cir., 1957, 242 F.2d 843, 848 there would seem to be no basis in reason why a court could not invoke the Eighth Amendment, either specifically or by analogy, to prevent an abuse of the power of punishment though it be only manifested in a civil form. Cf. Geffen v. Baltimore Markets, 325 Pa. 509, 191 A. 24, 28. But we have found no abuse here.

■ In sum, the circumstances disclose no Constitutional frailty in the assessment of the instant forfeitures. As pointed out, they rest on actual damages, whether proved or unproved; they rest on a firm basis of a reasonable civil punishment; and they rest on a foundation combined of these two.

■ Cross-error has been assigned by the Government in the Toepleman case to the disallowance of the damages claimed in its complaint. The fraud tainting the notes consisted of the representation by this appellant that the pledged cotton had been produced by the makers of the notes, when in truth it had not been. Of the original 82 fraudulent notes, 43 went into default at maturity.

The notes, collateraled by the warehoused cotton, were negotiated with the Commodity Credit Corporation in 1948. The fraud was discovered in 1949. In April 1950 appellant offered to redeem all of the cotton at the amount of the unpaid notes plus a sum for the investigation expense of the Government. At that time the cotton could have been sold on the market at a small profit. The offer was not accepted. It was renewed in August 1951; it was never accepted. The cotton was not foreclosed until January 1955 and then at a loss of $6733.97. During these six years the market price of the cotton fluctuated, some times exceeding and at other times falling below the amount of the loan. Settlement negotiations were in progress throughout the period.

Under the formula of the statute, the United States in this action sought double the amount of its loss on the cotton. But the trial judge concluded that the loss was not due to the fraud. He reasoned that "the loss here where the Government held the cotton over six years would have been exactly the same had every bale of the cotton been eligible for loan and, consequently, no false claims filed".

We cannot agree with the trial court in this aspect of the case. But for the fraud the cotton would never have been the Government's responsibility. Having by his fraud thrust this burden on the United States, the appellant cannot be exonerated by the failure of the Government to cast it off at the most propitious time. The fraud was the effecting cause of the loss, the drop in the market a foreseeable incident. The amount of the loss not being in controversy, judgment must

go for the Government against the appellant for twice that sum, an aggregate of $13,467.94.

We affirm the final order in the Cato case; we affirm the order in the Toepleman case in respect to the forfeitures decreed, but vacate it insofar as it disallows a recovery of damages, now remanding that action for entry of a judgment to include the damages as well as the forfeitures.

Order in accordance with opinion.