**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Herman UEBER, Defendant-Appellant.**

**No. 14530.**

United States Court of Appeals
Sixth Circuit.

Feb. 27, 1962.

Marvin S. Shapiro, Atty., Dept. of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Lawrence Gubow, U. S. Atty., Detroit, Mich., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellee.

George W. Tobias, Detroit, Mich. (Leithauser, Leithauser & Tobias, Detroit, Mich., on the brief), for defendant-appellant.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Herman Ueber, defendant-appellant, appeals from a judgment against him in favor of the United States in the total sum of $158,900.00. The action was brought under Title 31 U.S.C.A. § 231 (False Claims Act). An amended complaint charged that Ueber and his wholly owned corporation, Ueber Tool and Manufacturing Co., referred to herein as the Ueber Company, had, in violation of said act, made or caused to be made and presented, false claims upon a department of the United States government, by which claims the Ueber corporation obtained payment of a total sum of $25,-450.00. The Ueber Company, during the period from July 11, 1951, to February 20, 1952, and thereafter, was performing two subcontracts which it had from Kaiser Manufacturing Corporation and Chase Aircraft Company, Inc., the latter companys being prime contractors for the furnishing of airplane parts for the United States Air Force. The prime contracts were cost-plus-fixed-fee contracts.

Ueber was President of the Ueber Company.

The Ueber Company's subcontracts with Kaiser and Chase, dated July 11, 1951, and December 4, 1951, respectively, were so-called "time and material" contracts. The total compensation to be paid for the Ueber Company's performance of the contracts was to consist of its cost of direct material and $5.00 for each straight time hour and $6.25 for each overtime hour of direct labor devoted to such performance. The subcontracts provided that such payment for direct labor was to be in lieu of all other charges, whether for overhead, profit or otherwise. In the Chase subcontract, it was provided the direct labor would be "interpreted to include those employees actually engaged in the manufacture of tooling. Not to be included are those employees which, according to generally accepted accounting principles, are normally considered to be overhead."

The complaint charged that during the period from July 11, 1951, to February 20, 1952, the Ueber Company had charged as direct labor the time of three of its employees, Julius Baitinger, John Shirilla and Melville Wilber; that the work of none of such employees could properly be so classified, and was actually overhead or indirect labor. The Ueber Company presented a total of 422 invoices to Kaiser and Chase containing such charges, the first group of which was presented to Kaiser on October 19, 1951. Based upon the Ueber Company's invoices, Kaiser presented in all 33 public vouchers to the United States, the first of which was dated November 16, 1951; Chase presented 21 of such public vouchers, the first of which was dated August 4, 1952. This suit was commenced September 4, 1957. The District Judge found that charging the time of Baitinger, Shirilla and Wilber as direct labor was improper, that Ueber and the Ueber Company knew so and, with intent to defraud, caused false claims therefor to be presented to the United States, obtaining thereby a total of $25,450.00. In giving judgment to plaintiff, and pursuant to Title 31 U.S.

C.A. § 231, the District Judge doubled the aforesaid amount to $50,900.00 and awarded $2,000.00 for each public voucher submitted, 33 through Kaiser and 21 through Chase, totalling $108,000.00. This made a total judgment of $158,900.-00. The judgment ran against appellant Ueber, individually, and against the Ueber Company. The corporation did not defend the action. It had sold its assets, but had not been finally dissolved.

Ueber appeals and presents some nine questions. Regrouping them, we discuss the following: 1. Was the action barred by the six year statute of limitations provided in Title 31 U.S.C.A. § 235? 2. Did the District Judge err in assessing a $2,000.00 forfeiture for each of 54 public vouchers as against Ueber's contention that only two such forfeitures, one for each subcontract, should have been assessed? 3. Were the District Judge's findings of fact clearly erroneous? 4. Did the District Judge apply the wrong standard of proof in determining whether plaintiff had made out a case?

■ 1. *Statute of Limitations.* Section 235, Title 31 U.S.C.A., provides that, "Every such suit (for false claims) shall be commenced within six years from the commission of the act, and not afterward." The practice of charging the time of Baitinger, Shirilla and Wilber began in July, 1951. Ueber testified that at that time he directed such employees to so charge their time. He contends that if he did violate § 231, the violation occurred at that time, to wit: in July, 1951, which was more than six years prior to commencement of this action on September 4, 1957. Ueber argues that if he "committed an act" proscribed by § 231, it was accomplished in July, 1951, and the limitation period then began to run.

The government meets Ueber's contention by asserting, first, that Ueber's offense was fraudulently concealed by him and not discovered until December of 1954, so that the statute was tolled until that time; and, second, that the statute did not begin to run until the first false voucher was actually presented to the United States in October of 1951, be-

cause only then did plaintiff have a cause of action.

We are satisfied that the government's second position is sound, namely, that the causes of action sued upon did not come into being, nor was there an actual violation of § 231, until the first voucher seeking payment of the false claims was presented to the United States. The first of such vouchers was presented on November 16, 1951, less than six years prior to the commencement of the action. Section 231 gives a cause of action to the government against any person who "shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the * * * service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious or fraudulent * * *." The clear import of this language is that no offense is committed until a false claim is made or presented, or caused to be made or presented, to a department of the government. Ueber admits that he decided to charge, and directed the charging of, the work of the three employees involved, as direct labor. Such decision and direction was made in July 1951, and Ueber testified that he was responsible for the action of the company's billing department which implemented his decision. His conception of the plan and the preparation of false invoices within the company did not ripen into a violation until false vouchers based upon false invoices were caused to be presented to the government in November of 1951. Had Ueber changed his mind at any time prior to that date and not caused any false vouchers to be submitted, no violation would have occurred and no cause of action would have arisen. We hold that no act of violation occurred and no cause of action arose prior to November 21, 1951. United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001; Smith v. United States, 287 F.2d 299, 304 (CA 5, 1961); United States v. Globe Remodeling Co., 196 F.Supp. 652, (D.C.Vt., 1961).

If we should consider that the delivery of invoices to Kaiser and Chase was the event that started the running of the statute, Ueber's position would not be aided. The first of such invoices was so presented on October 19, 1951.

2. *Was it error to assess a $2,-000.00 forfeiture for each public voucher submitted?* The evidence disclosed that the Ueber Company submitted 422 invoices to Kaiser and Chase, each of which contained false claims for direct labor. From these invoices, Kaiser prepared and submitted to the government 33 vouchers and Chase presented 21 of such vouchers. The District Judge assessed a $2,000.00 forfeiture for each of the 54 vouchers so presented to the United States. Ueber contends that only two of such forfeitures should have been imposed, one for the subcontract with Kaiser and one for the Chase subcontract. We disagree.

The conduct proscribed by § 231, as applicable here, consisted of acts of causing false claims to be presented to the government. Each voucher which Ueber caused to be submitted through Kaiser and Chase was a separate act justifying an assessment of a separate forfeiture. United States v. Hess, 317 U.S. 537, 552, 63 S.Ct. 379, 87 L.Ed. 443; Toepleman v. United States, 263 F.2d 697, 699 (CA 4, 1959); United States v. National Wholesalers, 236 F.2d 944, 950 (CA 9, 1956); Faulk v. United States, 198 F.2d 169, 171 (CA 5, 1952); United States v. American Precision Products Corporation, D.C., 115 F.Supp. 823, 828; First Nat'l Bank of Birmingham v. United States, D.C., 117 F.Supp. 486, 489; United States v. Collyer Insulated Wire Co., D.C., 94 F.Supp. 493, 496, 497. Plaintiff's complaint did not charge that the entering into subcontracts with Kaiser and Chase in any way violated § 231. These contracts were valid. The vouchers submitted to the United States to obtain payments under such contracts made up the acts which offended the False Claims Act. If after remand, as hereinafter ordered, the District Judge's findings of fact are sustainable, we would find no

error in the assessment of forfeitures in the total amount of $108,000.00.

3. *Were the District Judge's findings of fact clearly erroneous?* The District Judge made findings of fact that the work performed by three employees whose time was charged as direct labor constituted, in fact, indirect labor; that Ueber and the Ueber Company knew that this work was, in fact, indirect labor; that they knew that the vouchers which they caused to be submitted for payment were false and fraudulent; and that they caused such vouchers to be presented with the intent to defraud the government. For the reasons discussed below in 4 (b) (Standard of Proof) it would be premature for us to determine whether such findings are clearly erroneous.

4. *Standard of Proof.*

a) This case began as a jury trial. At the close of the government's case, a second count which charged common law fraud against Ueber, the Ueber Company and other defendants who had demanded a jury, was dismissed on motion. The case then proceeded as a trial without a jury. In a colloquy which occurred prior to the discharge of the jury, the District Judge said:

> "Well, in any fraud case, fraud is never presumed, it has to be proved. But here you have ample testimony, in my opinion, that would warrant the jury in finding that these people knew *or should have known,* that they had no right to charge indirect labor on the part of these three employees to these two contracts."

It is not clear whether such remarks related to the motion to dismiss the common law count or the count under the False Claims Act.

■ Appellant argues from the foregoing that the District Judge, in making his findings and conclusions, assumed that it was sufficient if the defendant Ueber "should have known" of the wrong of his conduct. Whatever significance may be attached to the instance where the Court used such phrase, he found as a fact, "That the defendants Herman Ueber and Ueber Tool and Manufacturing Company knew *and* should have known" of the illegality and fraud of their conduct. His conclusions of law demonstrate that, as a matter of law, he was holding it necessary that proof of defendants' actual knowledge was necessary. He stated, "The word 'false' as used in the statute, means that the claim was untrue when made, and was then *known to be untrue* by the person making it, or causing it to be made."

We think it fairly appears that in finding guilty knowledge on the part of Ueber, the District Judge did not do so on any assumption that proof that he "should have known" was sufficient. His addition of the conjunctive phrase "and should have known" to his finding that Ueber did know, while unnecessary, did not impair his finding that Ueber had the necessary scienter.

b) In a colloquy in which defense counsel claimed that the government had more than the ordinary burden of proof in a suit under the False Claims Act, the District Judge commented, "They only have the ordinary burden of proof here." This subject was not discussed in the District Judge's conclusions of law.

■ Appellant Ueber charges that because the gravamen of the plaintiff's case was intentional fraud and misrepresentation, the government was required to establish it by clear, unequivocal and convincing evidence. Such is the general rule. Lalone v. United States, 164 U.S. 255, 257; Blakeslee v. Wallace, 45 F.2d 347, 350 (CA 6, 1930); 9 Wigmore on Evidence, 3rd Ed., § 2498, p. 329. The case of Equitable Life Assurance Soc. of the United States v. Johnson, 81 F.2d 543, (CA 6, 1936) was a suit for the recovery of money obtained through misrepresentation, fraud and deceit. Judge Hicks, of this court, there said:

> "Fraud is not to be presumed and the burden of establishing it was upon appellees. They were not required to establish it beyond a reasonable doubt (Oriel v. Russell, 278 U.S. 358, 364, 49 S.Ct. 173, 73 L.Ed.

419), but something more is required than the mere weight, or preponderance, of the evidence. It is essential that the evidence should be clear, unequivocal, and convincing."

We do not think that because this case involves a statutory cause of action under the False Claims Act, the government is relieved from meeting the burden applicable to any fraud action, statutory or common law. We do not hold, as did the case of United States v. Shapleigh, 54 F. 126, (CA 8, 1893) that proof beyond a reasonable doubt is required in a § 231, Title 31 U.S.C.A. action. The case of United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, holds that an action under the False Claims Act is a civil action for damages, neither criminal nor penal in nature. It should be noted here that, except for the colloquy above referred to, the subject under discussion was not called to the attention of the District Judge. Neither party proposed findings or conclusions of law, nor was there any motion made to amend or extend the Court's findings under Rule 52(b), F.R.Civ.P. 28 U.S.C.A.

There being no specific expression on this subject in his findings and conclusions, we may not speculate as to which standard of proof the District Judge utilized in arriving at such findings and conclusions. Nor may we, on this appeal, review the evidence to make a finding of fact that the government did, or did not, make out its case by clear, unequivocal and convincing evidence. We are of the opinion that this cause should be remanded to the district court for further findings of fact, based upon the District Judge's application of the rule which we hold was required to be employed by him in making his findings of fact. Without such findings, we are unable to properly review the alleged error discussed in this part of our opinion.

When made, the findings should be certified to this court as a supplemental record on appeal. Until such time as the supplemental record is certified to us, we retain jurisdiction of this appeal. Cross v. Pasley, 267 F.2d 824, 826 (CA 8, 1959); Title 28 U.S.C.A. § 2106.

We find no merit in other points made by appellant.

This cause is remanded to the District Court for further proceedings in conformity herewith.