UNITED STATES of America, Plaintiff-Appellant and Cross-Appellee,

v.

EKELMAN & ASSOCIATES, INC., et al., Defendants-Appellees,

and

Ekelman & Associates, Inc., et al., Cross-Appellants.

Nos. 75–1123, 75–1124.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1975.

Decided March 12, 1976.

Ralph B. Guy, Jr., U. S. Atty., Fred M. Mester, Asst. U. S. Atty., Detroit, Mich., Alexander Younger, Dept. of Justice, Fraud Section-Civ. Div., Washington, D. C., William Kanter, David M. Cohen, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Bernard J. Fieger, Fieger, Golden & Cousens, Southfield, Mich., Morris Weller, Weller, Summer & Summer, Detroit, Mich., Sidney E. Pollick, Bonk, Pollick & Wartell, Southfield, Mich., N. C. Deday LaRene, Detroit, Mich., for defendants-appellees.

Before PHILLIPS, Chief Judge, MILLER, Circuit Judge, and MARKEY, Chief Judge.*

WILLIAM E. MILLER, Circuit Judge.

The United States instituted this action in district court against the defendants seeking double damages and forfeitures under the False Claims Act, 31 U.S.C. § 231 *et seq.* Generally, the complaint alleges that

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

the defendants had fraudulently procured the guarantee by the Veterans Administration ("VA") of a number of loans made to veterans pursuant to Title III of the Servicemen's Readjustment Assistance Act of 1944, as amended, 38 U.S.C. § 1810 *et seq.*, as well as the insurance by the Federal Housing Administration ("FHA") of another loan pursuant to the National Housing Act, as amended, 12 U.S.C. § 1707 *et seq.* Allegedly, the loans went into default causing the VA and FHA to expend funds in fulfilling the obligations which they had undertaken with respect to the loans.

The case was tried to the court without a jury, and at the close of the government's evidence as to liability, the defendants moved to dismiss. The court, treating the motion as in the nature of a motion for a directed verdict, sustained it in part and denied it in part. As to a large number of the 32 counts of the complaint, the court, in a 91–page opinion, concluded that the government had established a *prima facie* case against some or all of the defendants. The court also held that the six-year statute of limitations prescribed by the False Claims Act, 31 U.S.C. § 235, did not begin to run until the mortgage holder presented a claim to the government and, consequently, that the action was not barred.

Defendant Franklin Mortgage Corporation ("Franklin") then presented its evidence in support of the claim of nonliability. The government submitted evidence as to damages. Ekelman & Associates, Inc., Bernard Ekelman, Irwin Saul Ekelman ("Ekelman defendants"), Charles Fields, and Donald S. Hutchison presented no evidence.

At the conclusion of all of the evidence, the court, in a 38-page opinion, adopted the findings and conclusions of its first opinion as to the Ekelman defendants and Fields and Hutchison but concluded that the evidence was not sufficient to establish the liability of Franklin under the False Claims Act or on a common law theory of fraud

and deceit. On the issue of damages, the court held that the amount of actual damages sustained by the government was the amount paid upon default to the mortgage holder by the government *plus* reasonable expenses and maintenance and repair costs incurred by the government in preserving the mortgaged property *less* credits due the defendants, such as funds realized upon ultimate disposition of the property, rental income derived from the property, and any amount recovered from the veteran-mortgagor by the government. The court concluded that the amount of actual damage should then be doubled and added to the statutory forfeiture amount and, consequently, that any credits due the defendant should be deducted before, and not after, any doubling of damages. Money damages were awarded to the government against the Ekelman defendants, Fields, and Hutchison.[1] The government was denied any recovery from Franklin.

The government, in No. 75–1123, has appealed from the portions of the district court's judgment absolving Franklin of liability and holding that the credits due defendants should be deducted before, and not after, any doubling of damages. The Ekelman defendants and Fields, in No. 75–1124, have appealed from portions of the district court's judgment: (1) holding them liable under the False Claims Act, (2) including maintenance and repair costs in the measure of damages, and (3) holding that the action was not barred by the six-year statute of limitations.

## I. No. 75–1123

The government argues that the district court erred in absolving Franklin of liability under the False Claims Act and on a common law theory of fraud and deceit because the evidence demonstrates that Franklin recklessly failed to make any effort to determine the accuracy of information it received from the Ekelman defend-

---

1. The money damages were apportioned as follows:

 (a) against Hutchison: $242,718.12
 (b) against Bernard Ekelman: $295,149.90
 (c) against Fields: $32,700.34
 (d) against Irwin Saul Ekelman: $43,757.54
 (e) against Ekelman & Associates, Inc.: $328,441.46

ants and Fields, Hutchison, and others and submitted to the government under the VA and FHA loan guarantee and insurance programs.

In a case under the False Claims Act, the "gravamen" of the action is "intentional fraud and misrepresentation" which the government is required to establish by "clear, unequivocal, and convincing evidence." *United States v. Ueber,* 299 F.2d 310, 314 (6th Cir. 1962). Some courts have held that a specific intent to defraud the government is a necessary requisite to liability under the Act. Other courts, on the other hand, require only the *knowing* submission of a false claim. *See United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47, 56 (8th Cir. 1973) (cases cited). The Act itself provides:

> Any person . . . who shall make or cause to be made, or present or cause to be presented, for payment or approval . . . any claim . . . *knowing* such claim to be false, fictitious, or fraudulent . . .. 31 U.S.C. § 231 [emphasis added].

Franklin argues that the statutory term "knowing" requires actual knowledge of falsity and not reckless disregard of the truth.

In *Ueber, supra,* the defendant-appellant argued that the district court had erroneously assumed that it was sufficient for liability under the Act if it was proved that the defendant *should* have known the falsity of the representations. In rejecting defendant-appellant's argument, this Court stated at page 314:

> His conclusions of law demonstrate that, as a matter of law, he was holding it necessary that proof of defendants' *actual* knowledge was necessary [emphasis added].

Thus, the law of this Circuit requires a showing of actual knowledge to establish liability under the False Claims Act. This appears to be the preponderant view. *See, e. g., United States v. Aerodex, Inc.,* 469 F.2d 1003 (5th Cir. 1972); *United States v. Mead,* 426 F.2d 118 (9th Cir. 1970); *Eastern School v. United States,* 381 F.2d 421, 180 Ct.Cl. 676 (1967). *But see United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47 (8th Cir. 1973).

The district court found as a fact that there was no actual knowledge on the part of Franklin that any information submitted by it to the government was false or fraudulent. As we hold that the district court's finding on this point is not clearly erroneous, the government has not established liability on the part of Franklin under the False Claims Act.

The government, however, insists that Franklin had a duty under the statute establishing the VA loan guarantee program to verify the accuracy of the information which passed through its hands from the veterans and the defendant real estate brokers (Ekelman defendants, Fields and Hutchison) to the VA and FHA and that breach of this duty is sufficient to establish Franklin's liability under the False Claims Act.

The district court found that Franklin was a "non-supervised" lender as opposed to a "supervised" lender. Supervised lenders are banks, savings and loan associations, insurance companies, and similar organizations subject to the supervision of a federal or state agency. The supervised lender may make loans which are automatically guaranteed without the prior approval of the VA. Non-supervised lenders, on the other hand, must submit a detailed package to the VA, which the VA reviews before agreeing to guarantee the loan.[2] The government asserts that a non-

---

2. The "package" submitted to the VA by non-supervised lenders consists of:

 (a) a Certificate of Eligibility obtained from the VA indicating that the veteran-mortgagor is eligible and stating the amount of the guarantee

 (b) a copy of the property purchase agreement

 (c) an application for guaranty, signed by the prospective lender and veteran-mortgagor, containing the following certification by the prospective lender:

 THE UNDERSIGNED LENDER CERTIFIES THAT: ALL INFORMATION REFLECTED IN THIS APPLICATION IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

supervised lender, such as Franklin, should be held liable under the False Claims Act for failing to verify information, subsequently determined to be false, which it certified was "true to the best of [its] knowledge and belief." We agree with the Fifth Circuit's rejection of this position in *United States v. DeWitt*, 265 F.2d 393, *cert. denied*, 361 U.S. 866, 80 S.Ct. 121, 4 L.Ed.2d 105 (1959). In *DeWitt*, a real estate dealer falsely represented to Mortgage Investment Company, a non-supervised lender, that veterans-mortgagors intended to occupy the mortgaged homes in question. In affirming the granting of summary judgment for the lender, the court stated at page 400:

> As it is admitted that Lender did nothing but make the loans on what it thought was a valid transaction and had no knowledge, actual or constructive, that the veteran no longer intended to occupy the house as his home, the Lender's action was not within the False Claims Act. Neither this Act nor the Acts of Congress providing for loan guaranties were intended under circumstances such as these to impose on such lenders the burdens which the contrary result would bring about. See also 38 U.S.C.A. § 694k.

*Cf. Mount Vernon Cooperative Bank v. Gleason*, 367 F.2d 289 (1st Cir. 1966) (bank —a supervised lender). The imposition of such burdens on non-supervised lenders, such as Franklin, could well induce them to terminate their participation in the VA and FHA guaranty programs to the detriment of veterans and other persons for whose benefit the programs were intended.

 As to the government's contention that Franklin recklessly failed to verify the information submitted to the VA and FHA, we agree with the district court's holding that in order for a representation to be held

Below the lender's signature block, the following appears:
FEDERAL STATUTES PROVIDE SEVERE PENALTIES FOR ANY FRAUD, INTENTIONAL MISREPRESENTATION, OR CRIMINAL CONNIVANCE OR CONSPIRACY PURPOSED TO INFLUENCE THE ISSUANCE OF ANY GUARANTY BY THE ADMINISTRATOR.

reckless under the common law the representation must appear to be an unqualified assertion of fact based on the personal knowledge of the party making the assertion when that party has no basis in fact for making it. The certification of truth "to the best of my knowledge and belief" is a qualified assertion of facts represented. It does not represent that the party making the assertion has personal knowledge of the facts and is not the equivalent of an assertion such as: "I certify that this veteran is indebted to others in the amount of $5,000." The district court, in reaching its conclusion, relied on the following statement by the court in *Sovereign Pocohantas Co. v. Bond*, 74 U.S.App.D.C. 175, 120 F.2d 39, 40 (1941):

> Moreover, the evidence would support an inference that the defendants knowingly made untrue statements of subjective fact. They did not say, "We are informed and believe that the company has been making money." Had they done so, it is not likely that the plaintiff would have relied on what they said. Their alleged statements were positive and unqualified. They purported, by clear implication, to know what they were talking about. Where knowledge is possible, one who represents a mere belief as knowledge misrepresents a fact. "Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud." [Footnote omitted]

(d) a Certificate of Reasonable Value issued by the VA indicating the market value of the property based on a report made by an independent appraiser
(e) a credit report on the veteran-mortgagor procured by the prospective lender
(f) documents verifying the employment of the veteran-mortgagor

In certifying the truth of the information in the application "to the best of its knowledge and belief" Franklin did no more than assert that it had no knowledge of, nor intention to make, misrepresentations.

■ The government also argues that the district court erred in subtracting credits due the defendants before, rather than after, the doubling of damages under the False Claims Act. The government's position has been recently accepted by the Supreme Court in *United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514, 44 U.S.L.W. 4078 (1976).

## II. No. 75–1124

■ The Ekelman defendants and Fields argue that the district court erred in holding them liable under the False Claims Act. They assert that the evidence did not clearly and convincingly establish their liability. The government alleges that in 31 instances the defendants caused veterans to apply for VA guaranteed mortgages and in one instance caused a veteran to apply for an FHA insured loan after the veteran had defaulted on a VA guaranteed loan. In all instances it is alleged that the defendants caused the veterans to submit false information [3] in support of the applications, that the government, relying on the false information, guaranteed the loans, and that when the mortgages went into default, the government incurred damages. The district court, after an extensive review of the evidence in two lengthy opinions, found:

(1) defendant Hutchison liable on 20 counts,

(2) defendant Fields liable on two counts,

(3) defendant Irwin Saul Ekelman liable on three counts,

(4) defendant Bernard Ekelman liable on 25 counts,

(5) defendant Ekelman & Associates, Inc., liable on 28 counts.

After a thorough review of the district court's opinions and the record in this case,

we cannot say that the conclusions of the district court as to the liability of the defendants were clearly erroneous.

The Ekelman defendants and Fields also argue that the district court erred by including maintenance and repair expenses in the measure of damages under the False Claims Act. It is asserted that these expenses do not naturally and proximately flow from the "act" of filing a fraudulent claim under the Act.

In *United States v. Woodbury,* 359 F.2d 370 (9th Cir. 1966), the court, in considering the measure of damages under the False Claims Act, stated at page 379:

> Ordinarily the measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful.

*Accord, United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47 (8th Cir. 1973). Although the court in *Woodbury* did not disturb the district court's finding that the government had not sustained damage, it did recognize that if properly proved, the government would be entitled to recover amounts expended "in the form of time and money spent by its employees in straightening out the mess . . . and in protecting its interests thereafter."

The district court relied on *Toepleman v. United States,* 263 F.2d 697 (4th Cir.), *cert. denied sub nom. Cato Bros., Inc. v. United States,* 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959). In *Toepleman,* crop support loans had been obtained from the Commodity Credit Corporation by fraudulently representing that cotton, pledged as collateral for the notes evidencing the loans, had been produced by the makers of the notes. The fraud was discovered in 1949. Although the defendant offered to redeem the cotton in 1950, when it could have been sold for a small profit, the offer was rejected, and the cotton was not fore-

---

3. For example, there was evidence in many cases that the veteran's assets were overstated

and his liabilities understated and that the veteran-buyer paid no money at the real estate

closed until 1955 at a loss of about $7,000. During the period from 1949 to 1955, settlement negotiations were being conducted while the market price of the cotton fluctuated above and below the amount of the loan. Disagreeing with the district court's conclusion that the government's loss on the cotton was not due to the fraud, the court stated at page 700:

> But for the fraud the cotton would never have been the Government's responsibility. Having by his fraud thrust this burden on the United States, the appellant cannot be exonerated by the failure of the Government to cast it off at the most propitious time. The fraud was the effecting cause of the loss, the drop in the market a foreseeable incident.

■ As the result of the fraud in the present case, the property securing the guaranteed and insured loans and the necessary burden of preserving the property were thrust on the government. We conclude that the government is entitled to the *reasonable* expenses incurred in preserving the property.

The case of *United States v. Aerodex, Inc.*, 469 F.2d 1003 (5th Cir. 1972), is distinguishable on its facts and not inconsistent with our view on this issue. In *Aerodex*, a government contractor deliberately mislabeled aircraft bearings and delivered them to the government, representing that the bearings were in accordance with contract specifications. In concluding that the cost of removing and replacing the mislabeled bearings was not within the measure of damages under the False Claims Act, the court held that the language of the Act does not include consequential damages resulting from the delivery of defective goods. In the present case, we are not concerned with the delivery of defective goods to the government under a supply contract. Instead, as the result of fraud, the government was forced to take possession of the real property and assume the burden of preserving it.

The Ekelman defendants and Fields also argue that the action is barred under the six-year statute of limitations of the False Claims Act, 31 U.S.C. § 235.[4] It is asserted that the statute begins to run on the date of the "commission of the act" of submitting the false information. The government, on the other hand, asserts that since no cause of action arose under the Act until the mortgage holder presented a claim to the VA or FHA for payment on the guaranty, the statute does not begin to run until the claim is presented.

■ A lending institution's application to the FHA for credit insurance on a home loan is not a claim against the government within the meaning of the False Claims Act. *United States v. McNinch,* 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). In *McNinch,* the Supreme Court stated at page 599, 78 S.Ct. at 952, 2 L.Ed.2d at 1004:

> As the Court of Appeals for the Third Circuit said in this same context, "the conception of a claim against the government normally connotes a demand for money or for some transfer of public property." *United States v. Tieger,* [3 Cir.] 234 F.2d 589, 591. In agreeing to insure a home improvement loan the FHA disburses no funds nor does it otherwise suffer immediate financial detriment.

In holding that the supplying of false information in support of an application to the Commodity Credit Corporation for a loan was a claim within the meaning of the False Claims Act, the Supreme Court in *United States v. Neifert-White Co.,* 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), again emphasized the requirement of immediate financial detriment, stating at page 232, 88 S.Ct. at 961, 19 L.Ed.2d at 1065:

> It is sufficient to note that the instant case involves a false statement made with the purpose and *effect of inducing the* Government immediately to part with money.

---

closing. In three cases, there was evidence that the veteran did not intent to occupy the property.

**4.** 31 U.S.C. § 235 provides:
> Every suit shall be commenced within six years from commission of the act, and not afterward.

No cause of action arises, and, consequently, the statute of limitations does not begin to run, until the mortgage holder presents a claim to the VA or FHA for *payment* on the guaranty or insurance. *United States v. Klein,* 230 F.Supp. 426 (W.D.Pa.1964), *aff'd mem.,* 356 F.2d 983 (3d Cir. 1966); *United States v. Goldberg,* 256 F.Supp. 540 (D.Mass.1966). *See United States v. Ueber,* 299 F.2d 310 (6th Cir. 1962); *United States ex rel. Vance v. Westinghouse Elec. Corp.,* 363 F.Supp. 1038 (W.D.Pa.1973). Accordingly, the present action is not barred.

Affirmed in part and reversed in part and remanded to the district court for further proceedings consistent with this opinion.