UNITED STATES of America, Plaintiff,

v.

Donald CRIPPS, Individually, and d/b/a Cripps Building Company, Defendants.

No. 75–71319.

United States District Court, E. D. Michigan, S. D.

Oct. 27, 1978.

See also D.C., 451 F.Supp. 598.

---

Katherine Gruenheck, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Stephen M. Wittenberg, Southfield, Mich., for defendants.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CORNELIA G. KENNEDY, Chief Judge.

Plaintiff, The United States of America, has moved the court pursuant to Rule 56, Federal Rules of Civil Procedure, for a summary judgment against defendant DONALD CRIPPS and CRIPPS BUILDING COMPANY, on counts one through five of the first amended complaint and on defendants' first amended counter-complaint. Subsequent to the filing of this motion, the government has filed a final amended complaint following the court's ruling that certain of plaintiff's claims made in the first amended complaint were barred by the statute of limitations and plaintiff has revised its motion for summary judgment to conform to the amended complaint filed June 16, 1978.

This is an action for damages against DONALD CRIPPS, Individually, and doing business as CRIPPS BUILDING COMPANY for conspiracy to defraud the Department of Housing and Urban Development (hereinafter HUD) and for bribery of a federal agent. Plaintiff claims damages under the False Claims Act, 31 U.S.C. § 231, and on theories of common law fraud or deceit, and bribery. Plaintiff claims that during the period of July 1971 through October 1972, by means of collusion, fraud and bribery, DONALD CRIPPS, doing business as CRIPPS BUILDING COMPANY, obtained directly or indirectly, contracts from HUD to repair properties assigned to a HUD Area Management Broker by the name of John C. LeBar, and that defendant inflated the price of the contracts. In its first amended complaint, plaintiff was

claiming damages for at least 136 contracts. As stated above, the court found that plaintiff could not add contracts in the first amended complaint but was restricted to those alleged in the original complaint because the statute of limitations had run under all plaintiff's theories, unless the first amended complaint related back to the filing of the original complaint, a theory which the court rejected. Plaintiff's final amended complaint therefore deleted several of the repair contracts discussed in the motion for summary judgment and reduced the number of repair contracts in dispute to 72.

Plaintiff contends that there is no issue of material fact with regard to either the final amended complaint or the defendants' first amended counter-claim and that plaintiff is entitled to judgment on both.

During the period of July 1971 through October 1972, the period in question, section 204(g) of the National Housing Act, 12 U.S.C. § 1710(g), authorized the Secretary of HUD to complete, renovate and modernize residential properties conveyed to HUD by reason of foreclosure on HUD insured mortgages. In implementation of this program, HUD contracted with real estate brokers in various cities throughout the United States including Detroit for the purpose of obtaining managers for these properties. These managers were called Area Management Brokers (hereinafter referred to as AMB).

It is undisputed that in March 1971, the Detroit Area Office of HUD awarded an AMB contract to John C. LeBar and LeBar Realty Service of Southgate, Michigan. Pursuant to this contract, LeBar was assigned responsibility for HUD-owned properties located in an area designated "Detroit Southwest Elmhurst–West Grand Boulevard." Under HUD's guidelines and requirements, LeBar's duties included drawing up specifications of needed repairs; soliciting bids for the repairs on a rotating basis from a list of HUD-approved contractors, and submitting the bids together with a Purchase Order and Payment Authorization Form, HUD Form 2542, (hereinafter referred to as a purchase order) made out to the lowest bidder for HUD approval and award of a repair contract for the work. The Area Management Broker was also required to inspect the contractor's work to determine whether the work was done according to specifications and to make a certification on the purchase order to that effect. The Area Management Broker was also required to obtain the contractor's certification on the purchase order that he had not obtained the contract through collusion and had complied with all applicable laws. The verified purchase order would then be submitted to HUD for re-inspection, approval, and payment directly to the contractor. The Area Management Broker guide adopted by HUD prohibited the Area Management Broker from engaging in any conflicts of interest. (Tab 6 of Plaintiff's motion).

Plaintiff's motion for summary judgment is based on the pleadings on file, a certified copy of an indictment against DONALD CRIPPS, doing business as CRIPPS BUILDING COMPANY, pertinent portions of the trial transcript in that criminal case, and defendants' plea of guilty to that indictment dated September 25, 1973; a certified copy of the AMB contract between HUD and John C. LeBar, affidavits of employees of HUD as well as witnesses at the criminal trial; defendants' admissions to plaintiff's requests for admission, and depositions of various persons including defendant CRIPPS and John C. LeBar. Defendant CRIPPS' response to the motion for summary judgment relies solely on his own affidavit and various legal arguments offered in response to the legal propositions urged by the government. Accepting as true the factual statements in defendant CRIPPS' affidavit there is no material issue of fact which bars plaintiff from the relief sought.

▮ It is undisputed that DONALD CRIPPS was formerly an employee of HUD responsible for monitoring the work of AMB's. He has admitted that he was versed in applicable HUD policies and guidelines relating to contracting for main-

tenance and repair of HUD-acquired properties and was responsible for supervising one or more Area Management Brokers in Detroit, Michigan. He has admitted in his deposition that after he terminated his federal employment and while a repair contractor, he convinced Mr. LeBar to relinquish his Area Management Broker functions and to allow defendant CRIPPS to perform them. At his plea of guilty in the criminal case he admitted that the testimony given against him at that trial, to the point at which the plea was taken, was true and correct, including the testimony that as an inducement to LeBar, CRIPPS agreed to perform LeBar's duties as Area Management Broker at no expense to LeBar. CRIPPS has admitted in response to the demands for admissions that he paid a total of $2,176.25 in salaries to the secretarial/clerical employees at LeBar Realty Service and by the same request for admissions and in his deposition CRIPPS admitted knowingly permitting LeBar to submit monthly AMB expense vouchers to HUD in an amount in excess of $14,000.00 to recover expenses which were incurred by CRIPPS rather than LeBar. In his deposition and by his guilty plea, he admitted that he utilized a collusive and fraudulent bidding scheme to obtain a constant source of work and income from HUD after assuming control of all maintenance and repair work in LeBar's area. Rather than soliciting competitive bids CRIPPS determined in advance who would win each repair job and prepared or directed the preparation of a low or winning bid and two or more higher or complementary bids. These fictitious bids were prepared by CRIPPS, or an associate of his, one Donald Ziemba, and secretarial and clerical employees at LeBar Realty Service. The names of various contractors were used in these bids. In at least 72 instances, those claimed by plaintiff in this action, HUD awarded a repair contract to the contractor in whose name CRIPPS submitted the lowest bid. When the contractor was notified of the award of a contract, the contract was turned over to CRIPPS to perform. He in turn assigned his work to a crew for each of these jobs. CRIPPS would take the purchase order and forge LeBar's signature certifying the work was performed according to specifications on the reverse side of the purchase order. CRIPPS forged the signature of the contractor in whose name the purchase order was made out certifying among other things that the contractor did not obtain the contract through collusion. When the purchase order was signed it was submitted to HUD for payment. The check would then be forwarded to the contractor named in the purchase order. That contractor would contact CRIPPS and pay CRIPPS the amount that CRIPPS demanded for the work. CRIPPS permitted the named contractor to retain a portion of the HUD payment. The United States has submitted affidavits of various employees of HUD that HUD first became aware of this scheme in late 1972. CRIPPS in his affidavit in response to the plaintiff's motion has stated that HUD was fully aware of the scheme during the entire period in question. CRIPPS, however, has not identified who, at HUD, was aware of the scheme. The affidavits of the government indicate that the matter was turned over to the Federal Bureau of Investigation in September, 1972 and defendant was indicted in April of 1973. Defendants' conclusionary affidavit that HUD was aware of this scheme without identifying any individual who had this knowledge is not an adequate response to the government's particularized affidavits as to when the person in charge of LeBar's area became aware of the fraud. Rule 56(e) requires that affidavits in response to a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. Defendant's general charge that HUD knew about it does not meet the standard of showing specific facts. *See Appolonio v. Baxter,* 217 F.2d 267, 270–271 (6th Cir. 1974). To the extent that defendant is urging that someone at HUD authorized him to engage in this conduct to defraud HUD and submit false claims and derive a benefit therefrom, such assertion even if true is no defense to plaintiff's claim. The conduct of anyone at HUD in authorizing conduct prohibited by LeBar's

AMB contract, the HUD Area Management Broker's Guide, and the HUD Property Disposition Manual would be ultra vires. Conflicts of interest are prohibited by those documents and competitive bidding was required for repair work costing between $200.00 and $2,000.00. If anyone at HUD authorized CRIPPS to violate the contract, Guide or Manual, that person exceeded his or her authority and the government is not bound by the unauthorized acts of its agents. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *see also Allison v. United States,* 426 F.2d 1324 (6th Cir. 1970). Further, CRIPPS has admitted his knowledge of the procedures of HUD.

The 72 contracts total $101,466.34. CRIPPS allowed the contractors whose names appeared on those contracts to retain at least $20,345.59 of this amount. To date, the contractors have repaid HUD a total of $7,944.58 of this sum pursuant to settlement agreements. Additionally, in determining the amount of each "winning" bid, CRIPPS included in the amount he demanded from the named contractor a 10% "profit", which amounted to at least $7,944.58. According to plaintiff's affidavits HUD first became aware of defendant CRIPPS' activities in Mr. LeBar's office in August of 1972. *See* Affidavit of Katherine Gruenheck. As stated above, CRIPPS was indicted in the Eastern District of Michigan on April 10, 1973. He was charged on 40 counts. A jury trial was commenced and after testimony of a number of witnesses, including several of the contractors whose names were used on the fictitious bids, plaintiff, at the close of the government's case pled guilty to count one of the indictment. The contractors who testified at the trial testified regarding nearly every one of the contracts for which plaintiff seeks damages. Each testified that CRIPPS did all of the work on these contracts and allowed them to keep a portion of the proceeds received from HUD—approximately 25% of the contract price.

Count one of the Indictment charged a conspiracy of CRIPPS, LeBar, and several Detroit area contractors to utilize the collusive bidding scheme referred to above in LeBar's AMB area. The conspiracy alleged in count one includes all the procedures referred to earlier in this court's opinion. At the time that CRIPPS entered his guilty plea he admitted that the testimony presented against him by the government in the course of the trial, was true and correct. His admission was made both by his counsel in his presence and by him personally in response to a question from the court.

Further, by way of request for admission, the government asked whether in exchange for CRIPPS and Ziemba's doing LeBar's work at no cost to LeBar, LeBar permitted CRIPPS to disregard the competitive bidding system and award his associates all of the HUD repair work he desired. CRIPPS failed to respond to this request, and it is deemed admitted. Further, CRIPPS in answer to an interrogatory has stated that he never obtained competitive bids from contractors on repair contracts for under $2,000.00 pertaining to HUD-owned properties in the LeBar AMB area, and that without HUD's knowledge or authority, he, rather than LeBar, and the winning contractor signed the certification of proper completion of work on purchase orders awarded through LeBar's AMB office. He has admitted in response to the plaintiff's second request for admissions a number of facts including an admission that the bids underlying the 72 contracts here were complementary and fictitious rather than competitive and authentic, and that he prepared or caused them to be prepared; that he performed substantially all of LeBar's AMB work and that LeBar requested and received compensation from HUD for work performed by CRIPPS rather than LeBar; and that he, CRIPPS, paid the secretarial salaries at LeBar's office. Further, CRIPPS testified at his deposition that he established the complementary bid system to ensure that contractors in the CRIPPS' group including himself, received HUD repair work.

CRIPPS has not pointed to any evidence which in any way controverts the

evidence pointed to by plaintiff that CRIPPS defrauded HUD by using a fraudulent and collusive bidding scheme on repair contracts of HUD-owned properties, and caused the preparation and/or submission of false AMB expense vouchers. It is well established that a prior criminal conviction establishes the facts underlying the conviction conclusively for purposes of a subsequent civil proceeding instituted by the federal government on the basis of the same facts. *Local 167, International Brotherhood of Teamsters v. United States,* 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804 (1934). Collateral estoppel is operative whether the conviction is obtained by jury verdict or through a guilty plea. *Blumen v. Haff,* 78 F.2d 833 (9th Cir. 1935). Defendant's conviction in the criminal case established that he had entered into an agreement to unlawfully influence HUD and that an overt act was committed in furtherance of the conspiracy. Knowledge and intent were elements of that offense and the conspiracy to which he pled guilty was one of uttering and publishing false documents to HUD. Thus, his conviction establishes that he intended to make or use a document or documents containing a statement or statements which he knew to be false and under the guilty plea in this case, it is clear that these included the repair bids, purchase orders, and monthly AMB invoices. It is further clear that the conspiracy was one to influence HUD to part with money. When defendant pled guilty he had acknowledged that the testimony given to that point by the government witnesses was true and correct. Indeed, he has not denied it to this day. Defendant's conduct violates the False Claims Act by reason of preparing or causing to be prepared, and/or submitting or causing to be submitted 72 fictitious sets of repair bids to HUD, as to which HUD awarded contracts and additionally, that he caused the preparation and/or submission of false AMB invoices in LeBar's name to obtain reimbursement for expenses which LeBar had not incurred. Liability under the False Claims Act has been found in cases involving similar factual situations. *See United States ex rel. Marcus v. Hess,* 41

F.Supp. 197 (W.D.Pa.1941), *aff'd,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), in which the court found that defendant contractors engaged in a collusive bidding scheme on public works projects which were paid for by the Public Works Administration of the federal government; the contractors were held liable for their scheme under the False Claims Act. *See also Brown v. United States,* 524 F.2d 693, 207 Ct.Cl. 768 (1975), involving a contractor who established a collusive bidding scheme to obtain prepared contracts awarded by HUD for work in a particular AMB's area. The contractor was held liable for those contracts as to which there was proof of collusive or non-competitive bidding. A similar result obtained in *United States v. Rohleder,* 157 F.2d 126 (3d Cir. 1946); and *United States v. Kates,* 419 F.Supp. 846 (E.D.Pa. 1976).

■ Once the liability for a conspiracy under the False Claims Act is established, each conspirator is liable for each of the overt acts committed pursuant to the conspiracy irrespective of the fact that he did not personally commit the act. *United States ex rel. Marcus v. Hess, supra,* 41 F.Supp. at 212, 218; Defendant is liable for each of the 72 repair contracts awarded as a consequence of his fraud and for each of the 16 false AMB invoices submitted pursuant to the conspiracy.

■ The court would also find that as a matter of law defendant CRIPPS is liable for common law fraud and that there is no material issue of fact as to any of its requirements. Those requirements are (1) there must be a material representation by the defendant; (2) the representation must be false; (3) it must be made with knowledge of its falsity; (4) it must be made with the intention that the plaintiff act on it; and (5) the plaintiff must have acted upon it and suffered an injury for which he sues. The bids were submitted as competitive and represented that the bidders intended to do the work described. Further, they stated that they were not obtained through collusion. All of these representations were false. The representations were material

since HUD was seeking competitive bids and the invoices submitted by LeBar for AMB expenses were also material representations and they too were false. Knowledge of the falsity of the representations is established by defendants' guilty plea. It cannot be disputed that the representations were made with the intent that the United States act upon them and further HUD suffered a monetary injury from the collusive non-competitive bids. The amount of that injury would be an issue of fact, however, for the trier of fact to determine. However, in view of the court's finding that plaintiff has valid claims under the False Claims Act and its damages under that theory can be fixed based on the exhibits before the court on this motion for summary judgment, there is no need to fix recovery on the fraud and deceit theory.

■ Count three of the first amended complaint alleges that CRIPPS bribed AMB LeBar by performing LeBar's duties without compensation and paying the salaries of secretarial personnel. Defendant has admitted that he made these payments upon LeBar's behalf and to LeBar and has admitted by his guilty plea that he did it for the purpose of gaining control over the repair contract program in LeBar's AMB area. That guilty plea conclusively established defendant's liability for bribery since it established payment of something of value to a public official for the purpose of influencing him in his official duties. *United States v. Carter,* 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910); *Jankowitz v. United States,* 533 F.2d 538, 209 Ct.Cl. 489 (1976). A right of action exists against both the payor of the bribes, CRIPPS, as well as the beneficiary LeBar. *Continental Management, Inc. v. United States,* 527 F.2d 613, 208 Ct.Cl. 501 (1975).

■ By the terms of the False Claims Act, the United States then is entitled to recover one forfeiture for CRIPPS' conspiracy as well as one forfeiture for each false claim, that is, each of the purchase orders prepared on the basis of collusive bids and each of the false Area Management Broker invoices, or $176,000.00. *United States ex*

*rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *United States v. Ueber,* 299 F.2d 310 (6th Cir. 1962). In addition to forfeitures, the statute provides for recovery of double the government's actual damages. 31 U.S.C. § 231.

With respect to the actual damages suffered as the result of the submission of the false AMB invoices, they are the aggregate amount of those invoices, or $14,126.06.

■ The measure of damages under the False Claims Act in cases involving collusive bidding is the difference between what the government actually paid out to the contractor and what it would have paid for the same work in the competitive market. *Brown v. United States, supra.* In the instant case the defendant has admitted that he took a 10% profit. In addition, he has admitted the amount by which the contracts were inflated, that is, the profits he allowed the collusive bidders to retain. That amount plus the 10% "profit" are not attributable to the actual cost of each job. Defendant has not submitted any affidavits or evidence to contradict the above applying the above standard which is that recognized in the *United States v. Kates, supra,* 419 F.Supp. at 851. The inflated portion of the contracts, *i. e.,* the profits and the amount paid the bogus contractor, amount to $28,290.17. The plaintiff is entitled to recover double this amount, or $56,580.34 as its damages for the collusive bid contracts. CRIPPS is entitled to reduce his double damages by the amount HUD has recovered from the other contractors. The attachments to the motion for summary judgment, which are uncontroverted, disclose this to be $7,289.00. Subtracting the sum recovered from other contractors leaves a balance of $49,291.34.

Plaintiff is entitled to damages under the False Claims Act for $176,000.00 in forfeitures, and $49,291.34 in actual damages (doubled), a total of $225,291.34. In addition, plaintiff is entitled to recover the value of the bribes paid to LeBar in the amount of $16,302.31.

Plaintiff has also asked for exemplary damages. It urges that it should be awarded these damages at least to compensate plaintiff for its losses resulting from CRIPPS' bribery. In the court's opinion it would be too difficult to separate the proportion of the cost of litigation relating to the bribery and the proportion resulting from the balance of the litigation and the court declines to award exemplary damages.

Defendant has urged that there is an issue of fact as to whether plaintiff's claims are barred by the statute of limitations. That defense, however, applies only if plaintiff recovers under common law theories, since it is conceded that the action was started within the six-year statute of limitations provided in the False Claims Act. In view of the court's ruling that plaintiff is entitled to recover under the False Claims Act, there is no material issue of fact as to the statute of limitations.

Defendant CRIPPS by a counter-claim seeks recovery against the plaintiff in the amount of $9,871.50, for alleged non-payment of 127 separate claims under a securing and winterizing contract purportedly awarded pursuant to the National Housing Act, 12 U.S.C. § 1710(g). This work was done on properties located predominantly in the AMB area of one Andrew Hedges. Under applicable HUD guidelines, the winterizing work was to be done at the rate of $15.00 per property. The government has filed an affidavit from Hedges that he was persuaded by CRIPPS to allow CRIPPS to handle all of Hedges' AMB paper work. In return for this favor, Hedges agreed to allow CRIPPS to perform all the winterizing and securing work in his area. Hedges' affidavit states that CRIPPS rather than Hedges prepared the purchase orders on the winterizing work, charging $20.00 per property. CRIPPS does not have purchase orders for the work described in counts 1 through 10, 16 through 34, 45 through 48, 51, and 56 through 57, of CRIPPS' first amended counter-complaint. The government has submitted an affidavit that due to the long delay in placing HUD on notice of this work, it is impossible to determine now whether the work was actually performed as CRIPPS contends. CRIPPS does have purchase orders for the remaining counts, i. e., counts 11 through 15, 35 through 44, 49 through 50, and 52 through 55 of his counter-complaint. According to the affidavit of Hedges these purchase orders were prepared by CRIPPS pursuant to CRIPPS' collusive scheme with Hedges. According to HUD's affidavit it has no record of receiving these purchase orders. CRIPPS has not responded in any way to Hedges' affidavit. The arrangement between CRIPPS and Hedges establishes a conflict of interest or bribery situation which violates the applicable HUD guidelines and the underlying purpose of the National Housing Act. These contracts are unenforceable since they were induced by fraud. *Crocker v. United States,* 240 U.S. 74, 36 S.Ct. 245, 60 L.Ed. 533 (1916). Further, the court would find that, as a matter of law, the defendant is guilty of laches. The uncontroverted affidavit of Mr. Frank McCaffery states that it is impossible to verify at this time that the work was properly done. Those counts as to which purchase orders are attached lack the necessary signatures and certifications of HUD employees that the work was done in the past. *See American Home Products Corp. v. Lockwood Manufacturing Co.,* 483 F.2d 1120 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974).

For the foregoing reasons the plaintiff's motion for summary judgment is GRANTED.