UNITED STATES of America, Appellee,

v.

Jerome RAPOPORT,
Defendant-Appellant.

No. 201, Docket 76–1291.

United States Court of Appeals,
Second Circuit.

Argued Sept. 20, 1976.

Decided Nov. 4, 1976.

David A. Cutner, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Lawrence B. Pedowitz, Asst. U. S. Atty., New York City, on the brief), for appellee.

Peter Fleming, Jr., New York City (Curtis, Mallet-Prevost, Colt & Mosle, John E. Sprizzo and Eliot Lauer, New York City, on the brief), for defendant-appellant Rapoport.

Before FRIENDLY, HAYS and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

Appellant, Jerome Rapoport, appeals his conviction by the district court after having been found guilty by a jury of several counts of causing the filing of false applications for loans guaranteed by the Small Business Administration, 18 U.S.C. §§ 2(b), 1001, 1014, and one count of swearing falsely at a previous jury trial, 18 U.S.C. § 1623. Appellant does not attack the sufficiency of the evidence supporting his conviction but nonetheless urges several grounds for reversal. We find no merit in Rapoport's arguments and accordingly we affirm the conviction.

Rapoport, the Government charged, had entered into agreements, disguised as consulting arrangements, with several financially hard-pressed businessmen, pursuant to which Rapoport was engaged to "find" Small Business Administration ("SBA") financing in exchange for contingent fees of ten percent of the loans sought. Rapoport advised his respective clients not to make disclosure of the finding agreements in their loan applications since Rapoport, a former SBA employee, knew the SBA would reject loan applications which revealed that finder's fees were being paid. Accordingly, Item 10 of the loan applications, where disclosure of compensation paid for "services of any nature whatever" in connection with the loans was to be made, was in all but one case answered incompletely by the responding businessmen. In the one instance, the applicant, Allan Pollak of Entre Nous Graphics, Inc., answered "None".

The Government initially charged Rapoport only with respect to the Entre Nous transaction. Rapoport, however, steadfast-

ly maintained his innocence, testifying at trial in his own behalf that the fee arrangements, rather than being compensation for "finding" services to be rendered by Rapoport, were part of a *bona fide* consulting agreement whereby Rapoport was to make himself available for financial consultation in the event the loans were obtained. At two successive trials juries were unable to reach verdicts, and mistrials resulted. The Government thereupon obtained a new indictment, repeating the accusations in connection with the Entre Nous transaction but adding allegations of false loan applications in several similar transactions and a charge that Rapoport had given false testimony at his second trial. After a third trial the jury reached a guilty verdict[1] and Rapoport now appeals.

## I

■ Rapoport argues that prosecutorial misconduct, in the form of an allegedly improper remark in the Government's rebuttal summation, warrants a new trial. In his rebuttal summation, the prosecuting attorney stated:

"Every defendant in this country is entitled to the effective assistance of counsel, but even the very best counsel money can buy can't disentangle this man—."

Rapoport contends that this remark "tore directly at the heart of the adversary system,"[2] and was highly prejudicial insofar as a central theme of the trial was "money".[3] More realistically interpreted, however, the prosecutor's remark was simply a statement that even with the most effective legal assistance, Rapoport could not overcome the overwhelming proof of his guilt. In any event, any possible prejudice to Rapoport which might have been occasioned by the

prosecutor's remark was prevented by a prompt cautionary instruction from the trial judge to the jury not to pay any heed to the "money can buy" remark. In view of the cautionary instruction, a remote if not altogether fanciful possibility of prejudice from the prosecutor's remark cannot force a new trial. *See United States v. Mallah,* 503 F.2d 971, 978–79 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975); *United States v. LaFroscia,* 485 F.2d 457, 459 (2d Cir. 1973).[4]

## II

Rapoport argues that his false testimony at the second Entre Nous trial was immaterial when given and thus could not have been the basis for a conviction of having made false statements at the jury trial in violation of 18 U.S.C. § 1623.[5] We disagree that the false statements were immaterial to the second trial.

At the second trial, Rapoport was charged only with having caused the filing of a false loan application in connection with the Entre Nous loan. Rapoport's central defense at that trial was his own testimony that the agreement with Pollak, the president of Entre Nous, was a *bona fide* consulting agreement and therefore the statement on the loan application was not false. Rapoport and Pollak each sharply controverted the other's testimony as to the true nature of the agreement. On cross-examination of Rapoport, the Government inquired whether Rapoport had acted as a finder in connection with an SBA-guaranteed loan to the American Medical Products Company. Rapoport answered the question in the negative. Rapoport was then asked whether he had received cash payments of thirty thousand dollars in connection with the American Medical loan. Rapoport ap-

1. The jury returned a verdict of guilty on Counts One, Two, Three, Six, Seven and Nine of the nine-count indictment. Counts Four, Five and Eight had been dismissed by the district court at the close of the Government's case.

2. Appellant's Brief, at 11.

3. *Id.* at 10.

4. Rapoport makes other charges of prosecutorial misconduct. The charges are groundless and do not warrant our discussion.

5. *United States v. Mancuso,* 485 F.2d 275, 280 (2d Cir. 1973); *United States v. Stone,* 429 F.2d 138, 140 (2d Cir. 1970).

parently answered that he had not.[6] Finally, Rapoport was asked whether he had a consulting agreement with American Medical. His affirmative answer formed the basis for the false swearing conviction from which he now appeals.

Rapoport now argues that the series of questions and responses concerning the American Medical loan was not material to the second trial. Rapoport correctly states that the applicable standard of materiality is whether Rapoport's testimony "was capable of influencing the jury on the issue before it," *United States v. Gugliaro,* 501 F.2d 68, 71 (2d Cir. 1974), or "would have been of sufficient probative importance . . . so that, as a minimum, further fruitful investigation would have occurred," *United States v. Freedman,* 445 F.2d 1220, 1227 (2d Cir. 1971). But Rapoport argues that the testimony in issue was not properly admissible into evidence at the second trial because it merely showed "defendant's propensity to engage in criminal conduct of the kind under indictment and on trial."[7]

Assuming, *arguendo,* that Rapoport is correct in his premise that inadmissible prior crimes evidence is *per se* immaterial under the standard applicable to convictions for false swearing,[8] we nonetheless believe that the American Medical testimony was relevant and admissible at the second Entre Nous trial. The intent of the parties with respect to the Entre Nous transaction was highly controverted, Pollak contending that the agreement was to compensate Rapoport as a finder and Rapoport himself testifying that the agreement was that he be paid for financial consulting services other than finding the SBA-guaranteed loan. Rapoport's own state of mind was therefore squarely in issue. By questioning Rapoport concerning the American Medical loan and the related cash payments, the Government was clearly seeking to establish that Rapoport had a guilty state of mind in connection with the American Medical Products loan. Such proof of a prior crime was in turn relevant to show that Rapoport had the requisite criminal intent in connection with the Entre Nous loan as well as the American Medical loan, that is, to show that he intended the Entre Nous "consulting" agreement as a sham to disguise the true nature of his compensation. Since there is no reason now to disturb the discretionary determination by the district court at the second trial that any possible prejudice occasioned by the American Medical evidence was outweighed by its probative effect, the evidence was properly admitted into evidence though it tended to establish a similar crime. Fed.R.Evidence 403, 404(b); *United States v. Santiago,* 528 F.2d 1130, 1134 (2d Cir.), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976). Since Rapoport's testimony was material and admissible when given, it provided an adequate basis for his conviction of false swearing in violation of 18 U.S.C. § 1623.

### III

The Government did not charge that Rapoport himself made the false statements in the loan applications. Rather, the

---

**6.** Rapoport apparently "nodded negatively" in response to the prosecutor's question. Count Eight of the indictment, which was based upon this response and a response to an improperly phrased question, was dismissed by the district court.

**7.** Appellant's Brief, at 17.

**8.** It would be difficult indeed for Rapoport to contend that his testimony concerning his dealings with American Medical was incapable of influencing the jury at the second trial—the relevant standard of materiality under 18 U.S.C. § 1623. The thrust of Rapoport's argument that the American Medical testimony was not material is instead directed elsewhere, at the question whether the evidence was admissible though it was evidence of a prior crime. Rapoport thereby substitutes the relatively stricter standard of Fed.R.Evidence 404(b) for the standard this Court has formulated in relation to section 1623. Arguably, the more lenient section 1623 standard is the more appropriate, though we have assumed the contrary for purposes of the discussion *infra.* A witness at a trial should not be given license to employ false statements which might influence the jury merely because the parties have failed to object to the testimony or the judge erroneously determined that it was admissible.

Government charged that Rapoport was liable as a principal because he "willfully cause[d] an act to be done which if directly performed by him or another would be an offense against the United States. . . ." 18 U.S.C. § 2(b). Rapoport does not contend that the evidence was not sufficient to establish that he caused the loan applicants to omit reference to him in their applications. Rather, appellant advances the novel theory that, because the Government failed to prove that the persons who actually made the loan applications were innocent of the substantive crime with which Rapoport was charged and the Government even produced evidence tending to establish their guilt, Rapoport could not be prosecuted under section 2(b). Rapoport argues that 18 U.S.C. § 2(a) punishes as a principal one who assists a *guilty* accomplice in committing an offense. He contends that if section 2(b) were also interpreted to include the situation where the accomplice was guilty, the statute would be redundant, a circumstance Congress could not have intended.

Rapoport's argument is simply untenable. Section 2(b) merely "removes all *doubt* that one who puts in motion or assists in the illegal enterprise or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty. . . ." Revisor's Note, 18 U.S.C. § 2 (emphasis supplied). The statute makes it "*unnecessary* that the intermediary who commits the forbidden act have a criminal intent." *United States v. Kelner,* 534 F.2d 1020, 1023 (2d Cir.), *petition for cert. filed,* 45 U.S.L.W. 3115 (No. 76–153, Aug. 2, 1976) (citations omitted) (emphasis supplied). *See also United States v. Kelley,* 395 F.2d 727, 729 (2d Cir.), *cert. denied,* 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376,

(1968). Though it removes any requirement that the intermediary be guilty, section 2(b) contains no express requirement that the intermediary actually be innocent.

While Rapoport suggests that logic supports the incorporation of such a requirement by construction, the opposite is true. It may frequently be a matter of doubt whether the intermediary is guilty or innocent of the crime with which the defendant is charged pursuant to section 2(b). Since the guilt or innocence of the intermediary is irrelevant to the moral culpability of the defendant, the sound administration of criminal justice would not be served by requiring judges to determine the validity of the myriad personal defenses and immunities which the intermediary might possess.[9] Moreover, the construction advocated by appellant would force upon prosecutors a hazardous election between proving a defendant's guilt by means of section 2(a) which under appellant's theory would require that the jury be satisfied of the intermediary's guilt, or by means of section 2(b) which would require satisfaction of the jury that the intermediary was innocent. We believe that Congress recognized as much when it enacted section 2(b) and accordingly we reject Rapoport's contention.

## IV

■ Finally, Rapoport argues that no "false" statements were made within the meaning of 18 U.S.C. §§ 1001, 1014 since all but one of the applicants answered Item 10 incompletely, for example, by listing the name of an accountant on retainer. The argument has no merit, especially in light of instructions accompanying the applications requiring full disclosure of the names of, and the amount of compensation being paid to, persons engaged to provide "serv-

[9]. For example, in *United States v. Kelner, supra,* the defendant had called a news conference to announce his organization's intention to assassinate a visiting foreign leader. This Court rejected defendant's argument that the television station which actually broadcast the threat, rather than he, had "caused" the transmission. In so doing, the Court noted that the criminality of the defendant's act was unaffected by any possible First Amendment right of the station to transmit the threat in interstate commerce—the conduct forbidden by the statute, 18 U.S.C. § 875(c)—and therefore refused to consider that issue. 534 F.2d at 1023 n.3. Rapoport's suggested construction of section 2(b), however, would have necessitated determination of the First Amendment question in *Kelner* though the activities of the defendant himself were without First Amendment protection.

ices of any nature whatever" in connection with the loan applications. By instructing the several applicants to answer Item 10 incompletely, Rapoport must be taken to have caused the applicants affirmatively to misrepresent that complete disclosure had been made. *See United States v. Williams,* 470 F.2d 915 (2d Cir. 1972) (omission of income from tax return).[10]

We have considered carefully appellant's other claims of error and find that they do not merit further discussion.

Affirmed.

10. Rapoport attempts to find support for his argument in our decision in *United States v. Diogo,* 320 F.2d 898 (2d Cir. 1963). In *Diogo,* defendants were charged with falsely representing to immigration authorities, in violation of 18 U.S.C. §§ 1001 and 1546, that they were married. This Court reversed the convictions because the representations were literally accurate under the New York matrimonial law deemed to be applicable, even though the defendants subjectively intended their marriages to be sham. *Diogo* is distinguished from the instant case because here no contention can fruitfully be made that the applications were literally accurate. Indeed, Rapoport apparently concedes they were incomplete.