### UNITED STATES of America, Plaintiff-Appellee,

v.

### Charles HUGHES, Defendant-Appellant.

### No. 78–1294.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1978.
Decided Oct. 11, 1978.

Hilbert L. Bradley, Gary, Ind., for defendant-appellant.

John S. Leonardo, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Appellant, Charles Hughes, appeals the civil judgment against him for violating the Federal False Claims Act, 31 U.S.C. § 231. The government's complaint alleged and the jury found that Hughes combined with Mallie J. Patterson and Verda Jean Patterson in a collusive bidding arrangement to assure the award of government contracts to particular bidders. Specifically, the appellant was found to have presented the Department of Housing and Urban Development with ten false claims while knowing the claims to be false.

Hughes was an Area Manager Broker (A.M.B.), a local real estate agent under contract with H.U.D. The A.M.B.'s duties included inspecting properties acquired by H.U.D. to determine the need for repairs. If the A.M.B. decided that repair was necessary and that the cost of repair was less than $2,000, H.U.D. regulations required that the A.M.B. obtain at least three competitive bids from contractors. The A.M.B. then was to submit those bids along with an accompanying purchase order-payment authorization to the local H.U.D. office for approval.

Evidence at trial established that the appellant told his co-defendants, the Pattersons, to submit bids in the names of fictitious contractors as well as that of the

Pattersons' own firm, Service Painting Company. Mrs. Patterson (now Mrs. Forsythe) would use different ink and handwriting styles to make the bids look authentic. Often the bid by the fictitious company would be accepted by H.U.D. Regardless of which firm was finally awarded the contract, the Pattersons' firm would complete the work, and ultimately the government check for payment would be deposited in the Pattersons' checking account. Both of the Pattersons testified that they were invited to submit multiple and fictitious bids by the appellant. The Pattersons also testified that some other H.U.D. employees knew of and invited the fictitious bidding.

Appellant presents two issues on this appeal. First, is proof of the defendant's intent to defraud the government necessary to establish a violation of the first clause of the False Claims Act? Second, is the government guilty of discriminatory enforcement of the law by bringing this suit against the appellant because of his race? A preliminary question not raised by the parties concerns the jurisdiction of this court to hear the appeal.

■■■ The judgment entered by the district court merely states the judgment is for plaintiff and against defendants. The judgment does not indicate the amount of the defendants' liability. Thus, the question arises whether the judgment is final so as to permit this court to hear the appeal under 28 U.S.C. § 1291. The False Claims Act provides that whoever knowingly makes a false, fictitious, or fraudulent claim against the federal government "shall forfeit and pay to the United States the sum of two thousand dollars, and, in addition, double the amount of damages" that the government sustained. Prior to trial, the government withdrew its request for dam-

ages and relied solely on the forfeiture provision of the Act.[1] This forfeiture provision is mandatory; it leaves the trial court without discretion to alter the statutory amount. Because the jury found against the defendants on ten separate counts, each based on ten distinct false claims, the amount of the defendants' liability must necessarily be $20,000.[2] Since the amount of the appellant's liability is not left to future events and is readily determined, we believe that nothing save ministerial tasks relating to computation were left for the trial judge. Consequently, the judgment entered against Hughes is final for purposes of review under 28 U.S.C. § 1291.

Appellant's first argument is that the government failed to prove that he possessed the mental state necessary to incur liability under the Act. Appellant concedes that the bids submitted by him were false and that he knew them to be false. Appellant maintains, however, that employees of H.U.D. to whom he sent the bids for approval knew and approved of his conduct. Therefore, appellant argues, he lacked the intent to deceive which he maintains is a prerequisite to liability under the Act. The trial court, however, instructed the jury that they need only find that the claims were false and that the appellant knew them to be false to find for the government.

The circuit courts have disagreed about the mental state that must accompany the presentation of a false claim within the meaning of the False Claims Act. Some maintain that the Act requires that the defendant possess the specific intent to defraud the government; others have held that the defendant need only knowingly present a false claim to the government. *See* Annot., 26 A.L.R.Fed. 307 (1976). In *United States v. Fox Lake State Bank,* 366

---

1. A false claim is actionable under the Act even though the United States has suffered no measurable damages from the claim. *Fleming v. United States,* 336 F.2d 475, 480 (10th Cir. 1964), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965); *United States v. Tieger,* 234 F.2d 589, 590 & n.4 (3rd Cir.), *cert. denied,* 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237 (1956).

2. All defendants in the action, including Hughes, are jointly and severally liable for this amount. *See United States v. Globe Remodeling Co.,* 196 F.Supp. 652, 657–58 (D.Vt.1961); *United States v. American Packing Co.,* 125 F.Supp. 788, 797 (D.N.J.1954).

F.2d 962 (7th Cir. 1966), this court apparently adopted the latter construction. In *Fox Lake,* the district court held that only knowledge of falsity was required by the first clause of the Act. 225 F.Supp. 723 (N.D.Ill.1963), *holding reaffirmed in* 240 F.Supp. 720, 723 (N.D.Ill.1965). By stressing the disjunctive "or" in the first clause of the Act, *see* 366 F.2d at 965, this court indicated its approval of the lower court's construction. Nevertheless, we reversed the judgment, holding that the evidence was insufficient to establish that the defendants in that case knowingly presented false claims to the government. Because the court's examination of the issue was so cursory and because of the conflict between the decisions of the circuit courts, we reexamine the issue once again and reaffirm our previous holding.

Those circuits that have construed the first clause of the Act to require specific intent to defraud rely on several grounds. In *United States v. Mead,* 426 F.2d 118 (9th Cir. 1970), the court dismissed the government's argument that the three adjectives, "false, fictitious, or fraudulent," should be read in the disjunctive as "a shaky foundation of semantic distinctions." *Id.* at 123. Instead, the court, apparently construing "or" to mean "and," said the language probably was the result of "the draftsman's desire to encompass the varying ways in which fraud is defined." *Id.* The court's construction, however, renders the first two adjectives surplusage and disregards the ordinary rule of statutory construction that "or" is disjunctive. Moreover, the use of the words "false, fictitious, or fraudulent" is equally consistent with the intention to draft the Act to encompass every variety of false or misleading claim made against the government.

The court in *Mead* could perceive no reason why only two of the six types of conduct proscribed in the False Claims Act should require the element of specific intent to defraud and was unwilling to ascribe to Congress the intent to make such a distinction. This argument, however, ignores the fact that the language of the Act does indeed make such a distinction. Since Congress did require specific intent to defraud as a prerequisite to liability in two parts of the Act, Congress must be presumed to have intended to require a less stringent measure of proof in the remaining parts. *See Fleming v. United States,* 336 F.2d 475, 479 (10th Cir. 1964). Finally, the court in *Mead* refused to construe the False Claims Act as altering the common law any further · than its language clearly demanded. This, of course, assumes the answer to the issue that needs to be resolved. The question is to what extent the statute alters the common law.

Other courts have regarded the False Claims Act as a penal act and, consequently, have strictly construed its provisions. *See, e. g., United States ex rel. Brensilber v. Bausch & Lomb Optical Co.,* 131 F.2d 545 (2d Cir. 1942), *aff'd by an equally divided court,* 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417 (1943) (per curiam). Although in one sense the Act may be considered punitive because it provides for double damages and a statutory forfeiture, the Supreme Court has characterized the Act as "remedial" and one which merely imposes civil sanctions, *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549–52, 63 S.Ct. 379, 87 L.Ed. 443 (1943). *See also Toepleman v. United States,* 263 F.2d 697 (4th Cir.), *cert. denied,* 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959). Consequently, the Act must be given "the fair meaning of its intendment." *United States ex rel. Marcus v. Hess,* 317 U.S. at 542, 63 S.Ct. at 383.

■■ Although the legislative history of the False Claims Act indicates that it was enacted to prevent "frauds," it is not clear that the word "fraud" as used in the legislative history was intended in its strict legal sense. *United States v. Cooperative Grain & Supply Co.,* 476 F.2d 47, 58 (8th Cir. 1973). Consequently, we believe a fair reading of the statute requires that it be construed to mean what it says. Anyone who "presents any claim upon or against the Government of the United States . . . knowing such claim to be false . . . ." is liable under the Act. The government need

not establish that the defendant intended to deceive, defraud, or cheat the government. This construction serves the remedial purpose of the civil sanction and comports with the language of the Act.

Appellant's second argument is that the judgment should be reversed because the government has failed to commence similar actions against other A.M.B.s and H.U.D. employees who also knew and participated in the submission of false claims. Hughes suggests that the sole reason for the government's action against him is that he is black, and, consequently, the commencement of this action by the government deprives him of equal protection of the laws. Some testimony at trial supports his allegations that other—presumably Caucasian—A.M.B.s did indeed participate in making similar false claims with knowledge of H.U.D. representatives. This testimony alone, however, even if accepted as true, fails to establish a violation of the appellant's constitutional rights.

 In *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973) (en banc), this court noted that the "presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *Id.* at 620. The court placed the burden of alleging and producing facts sufficient to overcome this presumption on the defendant. This presumption of regularity and allocation of the burden of proof are also appropriate in civil actions brought by the government. The government notes that Hughes' codefendants, the Pattersons, who are not members of a minority group, have earlier been prosecuted for, and plead guilty to, violating 18 U.S.C. § 1010. The conduct which led the government to initiate the criminal proceedings was similar to the conduct that led to the civil action against Hughes and the Pattersons here. Thus, the government argues, the record shows that any selective enforcement of the law has benefited rather than harmed Hughes, because no criminal proceedings have been instituted against him. This pat-

tern of enforcement of the laws designed to protect the federal government from false claims certainly tends to disprove Hughes' allegations of discriminatory enforcement of the law in violation of the Fifth Amendment and is a circumstance which is appropriately considered in determining whether he has made a *prima facie* case dispelling the presumption that the government has enforced the law evenhandedly. Consequently, we hold that the appellant has *simply failed to present facts tending to* show that, if there was selective enforcement of the False Claims Act, it "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

The judgment of the trial court is

AFFIRMED.