**UNITED STATES of America, Plaintiff,**

v.

**Jerome RAPOPORT, Defendant.**

**80 Civ. 2072 (GLG).**

United States District Court,
S. D. New York.

May 19, 1981.

**2.** The *Grigsby* case was recently reaffirmed by TECA in *Sauder v. DOE,* 648 F.2d 1341 (Em.App. 1981).

**520**

John S. Martin, Jr., U. S. Atty., for the Southern District of New York, New York City, for plaintiff; David M. Jones, Asst. U. S. Atty., New York City, of counsel.

Louis A. Mangone, New York City, for defendant; Elliot Schnapp, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

The defendant, Jerome Rapoport, a lawyer and former attorney-adviser at the federal Small Business Administration ("SBA"), was convicted of causing a false loan application to be made to a federally insured bank in violation of 18 U.S.C. § 1014. *United States v. Rapoport*, 75 Cr. 1246 (S.D.N.Y.), *aff'd*, 545 F.2d 802 (2d Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). The Government filed this action under the False Claims Act ("Act"),[1] to recover a statutory penalty of $2,000 plus double the $6,084.86 in damages that it alleges it sustained "by

reason of" the false claim. The Government now moves for summary judgment on the ground that Rapoport's criminal conviction estops Rapoport from raising any material issue of fact. For the reasons set forth below, the motion is granted with respect to the $2,000 statutory penalty, but is denied with respect to the claim for additional damages.

*Factual Background*

In the spring of 1974, one Allan Pollak, the owner and founder of the Entre Nous Corporation ("Entre Nous"), met with Rapoport about acquiring an SBA-insured loan. Rapoport told Pollak that he was quite experienced in obtaining SBA-insured loans and offered his assistance in exchange for a fee of ten percent of the loan. Although he was dissatisfied with the fee, Pollak eventually agreed to the arrangement because he had been unable to acquire a loan from other sources.

Rapoport instructed Pollak on such matters as how to prepare the papers, whom to deal with at the bank, and how to present the loan application to bank officials. Rapoport advised Pollak that his fee would have to be listed as a "consultant's fee" and warned him that the bank would not approve his loan application if it was aware that he had engaged Rapoport for the sole purpose of acquiring the loan.[2] Pollak, pursuant to Rapoport's instructions, answered "none" in response to Item 10 of the loan application, which requested the names of all attorneys, accountants, and other parties engaged by the loan applicant to acquire the loan.[3] This application was subsequently submitted to the Manufacturers Hanover Trust Co. ("Manufacturers Hanover"), which, after receiving SBA approval, tentatively approved a loan for $150,000, of which $80,000 was to be disbursed without

---

1. The portion of the Act dealing with civil prohibitions is codified in 31 U.S.C. § 231 *et seq.* The language in Title 31 differs in certain respects from that in the Revised Statutes. Since the codification has not been enacted into positive law, the official text is that which appears in the Revised Statutes. *United States v. Bornstein*, 423 U.S. 303, 305 n.1, 96 S.Ct. 523, 526 n.1, 46 L.Ed.2d 514 (1976).

2. SBA regulations prohibit the payment of commissions for obtaining SBA financial assistance. 13 C.F.R. § 122.18(a).

3. SBA regulations also require the applicant to certify the names of all parties engaged by the applicant to acquire SBA financial assistance. 13 C.F.R. § 122.18(b).

restrictions and $70,000 to be held in escrow for the purchase of certain specific items.

In June of 1974, Pollak, presumably worried about the false statements on his loan application, met with Assistant United States Attorney George Wilson and told Wilson about his dealings with Rapoport. In light of the criminal charges that could be instituted against him, and in exchange for a grant of immunity, Pollak agreed to cooperate with the Government by, among other things, tape-recording some of his conversations with Rapoport and testifying for the Government at Rapoport's trial.

Sometime in July of 1974, and before any money had been disbursed to Entre Nous, Manufacturers Hanover received a grand jury subpoena calling for the bank's records on Entre Nous. August McCarthy, the Manufacturers Hanover official in charge of the loan, advised Pollak that no money would be disbursed until the subpoena was cleared up. Pollak thereupon contacted Wilson and asked him to intercede. Wilson assured McCarthy that the subpoena "was not in any way to be construed a detrimental thing for Entre Nous's credit worthiness, and that there was no reason . . . that should forestall the bank from closing and disbursing the loan." (Testimony of August McCarthy, *United States v. Rapoport, supra,* Appellant's Appendix on Appeal at 140a.) Manufacturers Hanover thereupon disbursed the $80,000 to Entre Nous in August and placed the balance in a special escrow account. One month later, Entre Nous, which was already in default on its interest payments to Manufacturers Hanover, requested an additional $15,000 from the escrow account to meet its payments. At Rapoport's criminal trial, McCarthy testified that he initially denied this request, but eventually agreed after he received a phone call from the SBA asking him to reconsider his decision. McCarthy further testified that the SBA's [4] explanation for its request was that the SBA "had been asked to reconsider this by someone from the U.S. Attorney's Office." (*Id.* at 144a.)

Entre Nous eventually defaulted on the loan. Manufacturers Hanover liquidated the collateral, leaving a balance of $3,085.88, which was satisfied by the SBA. Meanwhile, after two trials resulting in "hung juries," Rapoport was convicted of causing the false statement about attorneys' fees, thus creating the foundation for the present case and motion.

*False Claims Act*

Originally enacted to punish and prevent frauds being perpetrated by contractors during the Civil War, the Act is used to compensate the government for false claims brought against it. *United States v. Bornstein,* 423 U.S. 303, 309, 96 S.Ct. 523, 527, 46 L.Ed.2d 514 (1976); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). The Act has been used in a variety of situations: to recover against a physician convicted of medicare fraud, *United States v. Zulli,* 418 F.Supp. 252 (E.D.Pa.1976); to recover against a contractor for bribing a federal agent, *United States v. Cripps,* 460 F.Supp. 969 (E.D.Mich. 1978); to recover against a congressman for submitting false travel vouchers to the clerk of the House of Representatives, *United States ex rel. Hollander v. Clay,* 420 F.Supp. 853 (D.D.C.1976); to recover against a veteran for hospitalization benefits received for nonservice-connected disability, *United States v. Shanks,* 384 F.2d 721 (10th Cir. 1967); and to recover against government contractors billing for nonexistent or worthless services, *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456 (5th Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

The Act is found in Revised Statutes § 3490 [5] and provides, in pertinent part:

Any person . . . who shall do or commit any of the acts prohibited by any of the provisions of section fifty-four hundred and thirty-eight, Title "CRIMES," shall forfeit and pay to the United States the sum of two thousand dollars, and, in addi-

---

**4.** McCarthy did not recall with whom he spoke at the SBA.

**5.** See note 1 *supra.*

tion, double the amount of damages which the United States may have sustained by reason of the doing or committing such act . . . .

Revised Statutes § 5438 (repealed) provides, in pertinent part:

> Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent ... shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars.

For the purposes of this motion, it is important to distinguish between the two forms of recovery provided for in the Act: a $2,000 forfeiture and double the amount of damages sustained by the government "by reason of" the false claim. The Government argues that Rapoport's criminal conviction entitles it to summary judgment for both the $2,000 forfeiture plus double the amount of money the SBA paid to Manufacturers Hanover on its guarantee of the Entre Nous loan. The defendant responds that summary judgment cannot issue for either because of the government's knowledge of the false statement prior to the disbursement of any funds.

**6.** Count One of the indictment charged:

> On or about May 14, 1974, in the Southern District of New York, JEROME RAPOPORT, the defendant, unlawfully, wilfully and knowingly did make and cause to be made a false statement and report for the purpose of influencing the actions of Manufacturers Hanover Trust Company, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, upon an application for a loan in the amount of $185,000 to Entre Nous Graphics, Inc., in that JEROME RAPOPORT, the defendant, represented to said bank that no attorney, accountant, appraiser, agent or other party had been engaged by or on behalf of Entre Nous Graphics, Inc. who had received or was to receive any fee or

### 1. $2,000 Forfeiture

All that the Act requires for imposition of the $2,000 forfeiture is that the defendant commit any of the acts enumerated in Revised Statutes § 5438. The Government's motion for summary judgment on this issue, therefore, turns on whether Rapoport's criminal conviction amounts to a finding that Rapoport made or caused to be made a false, fictitious, or fraudulent claim upon the United States.

■ It is well settled that a criminal conviction estops the convicted defendant from raising factual issues decided in the criminal proceeding in subsequent civil proceedings. *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978); *United States v. Frank*, 494 F.2d 145, 160 (2d Cir.), *cert. denied sub nom. Borgman v. United States*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974). This general rule applies to civil proceedings brought pursuant to the Federal Claims Act. *See United States v. Jacobson*, 467 F.Supp. 507, 508 (S.D.N.Y.1979). The court in the subsequent civil proceeding must determine the scope of the estoppel by determining "precisely what was decided in the criminal case by examining the record of the criminal trial, including the pleadings, the evidence submitted, and any opinions of the court." *United States v. Podell, supra*, 572 F.2d at 36.

■ Rapoport was convicted of making a false loan application to a federally insured bank in violation of Title 18 of the United States Code, sections 2, 1001, and 1014.[6] Judge Brieant instructed the jury that this crime consisted of five separate elements:

> other charge or compensation whatever for the purpose of rendering professional or other services of any nature whatever in connection with the preparation or presentation of the loan application; and that the proceeds of the loan for which the loan application was prepared and presented would be used only as follows: Debt payment trade $30,000 and Inventory and Carry A/R $155,000, whereas, in truth and in fact, as JEROME RAPOPORT, the defendant, then and there well knew, he had been engaged to obtain the loan for a fee of ten percent of the loan proceeds, contingent upon their receipt by Entre Nous Graphics Inc.
> (Title 18 United States Code, Sections 1014 and 2.)

1. That the defendant Jerome Rapoport made or caused to be made a false statement in an application to the bank for a loan;

2. That the false statement was made for the purposes of influencing the bank's action on the loan application;

3. That the false statement was made knowingly and wilfully;

4. That the false statement was material;

5. That the bank to which the false statement was made was a bank which was insured by the Federal Deposit Insurance Corporation.

(*United States v. Rapoport, supra,* Trial Transcript at 1166–67).

With respect to the elements of a violation of the Act, Rapoport's conviction establishes only that Rapoport caused to be made a certificate containing false information. The Government must also establish that there has been a "claim," *United States v. Hibbs,* 568 F.2d 347, 350 (3d Cir. 1977), and that there has been a payment. *United States v. McNinch,* 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958); *United States v. Hibbs, supra,* 568 F.2d at 350. There is no dispute that the Government has established these elements as well. Rapoport does not dispute that the SBA satisfied its guarantee to Manufacturers Hanover on the Entre Nous loan. Nor does he dispute that payment on an SBA loan guarantee constitutes a "claim" within the meaning of the Act. *See United States v. Veneziale,* 268 F.2d 504 (3d Cir. 1959). Thus, nothing appears to stand in the way of granting summary judgment for the $2,000 forfeiture.

Rapoport, relying on *Woodbury v. United States,* 232 F.Supp. 49 (D.Or.1964), *modified,* 359 F.2d 370 (9th Cir. 1966), argues that summary judgment cannot issue because the loan funds were disbursed after the government had knowledge of the false statements.[7] He argues, in effect, that the Government must establish reliance to recover the $2,000 forfeiture. This position is contrary to the very face of the statute.

While the Act uses the phrase "by reason of" in connection with the recovery of double damages, *see* discussion *infra,* there is no causality requirement with respect to the forfeiture. Indeed, it is well settled that the Government can recover the forfeiture without proving any damages. *See United States v. Hughes,* 585 F.2d 284 (7th Cir. 1978); *Fleming v. United States,* 336 F.2d 475 (10th Cir. 1964), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965); *Toepleman v. United States,* 263 F.2d 697 (4th Cir. 1959), *cert. denied,* 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959).

Rapoport's reliance on *Woodbury v. United States, supra,* is misplaced. While the district court in *Woodbury* noted that the "Government cannot claim that it was defrauded by the false representations of another party where it has knowledge of the facts, prior to the payment of the claim," 232 F.Supp. at 55, the basis of the court's decision was its finding that the plaintiff did not intend to defraud the government, and consequently did not present a false claim.[8] *Id.* at 56.

*United States v. Dinerstein,* 226 F.Supp. 368 (E.D.N.Y.1964), *aff'd in part, rev'd in part,* 362 F.2d 852 (2d Cir. 1966), provides a useful analogy. *Dinerstein* involved an action brought by the Government pursuant to the fraudulent claims provision of the Contract Settlement Act, 41 U.S.C. § 119, which bears a close resemblance to the False Claims Act.[9] The district court, re-

---

7. Rapoport does not appear to contend that the government had any knowledge of the false statement when it initially approved the loan.

8. Whether the Government must establish that the claimant intended to defraud the government in order to recover under the Act has been a source of judicial controversy. *See United States v. Hughes,* 585 F.2d 284, 286 (7th Cir. 1978); Annot., 26 A.L.R.Fed. 307 (1976).

9. 41 U.S.C. § 119 provides, in pertinent part:

Every person who makes or causes to be made, or presents or causes to be presented ... any claim, bill, receipt, voucher, statement, account, certificate, affidavit, or deposition, knowing the same to be false, fraudu-

ferring to the False Claims Act in support of its ruling that reliance is not necessary to the assessing of the $2,000 forfeiture of the Contract Settlement Act, noted that the $2,000 forfeiture provision of the False Claims Act applies even in "cases in which the United States seems to have discovered the fraud before making payment and thus not to have been either effectively deceived or pecuniarily damaged." 226 F.Supp. at 371. The Second Circuit did not comment on this particular proposition on appeal; however, it did agree with the district court's basic proposition that no reliance is necessary to recover the $2,000 forfeiture. *United States v. Dinerstein*, 362 F.2d 852, 855 (2d Cir. 1966). Accordingly, this Court concludes that summary judgment should issue for the $2,000 forfeiture. *See United States v. Jacobson*, 467 F.Supp. 507 (S.D.N.Y.1979).

### 2. Double Damages

■ In contrast to the forfeiture provision, the double damages provision of the Act requires the Government to establish a nexus between the illegal act and its damages in order to recover. The specific standard is that the damages must be "by reason of" the commission of the illegal act. *See* text of Act *supra.*

The Government, relying on *United States v. Cripps, supra,* and *United States v. Dinerstein, supra,* argues that it need not prove reliance to recover double damages and that it is consequently entitled to summary judgment on that issue also. The Government's position is erroneous in two respects. First, neither *Cripps* nor *Dinerstein* stands for the proposition that the Government need not prove reliance to satisfy the "by reason of" requirement. Second, it does not necessarily follow that the Government is entitled to summary judgment even if it is assumed that the

Government is not required to prove reliance—an assumption about which we have serious doubts, but need not decide at this juncture.

*Cripps* involved a contractor who used a collusive bidding scheme to obtain repair contracts from the Department of Housing and Urban Development ("HUD"). While the court granted the Government's motion for summary judgment, the case does not stand for the proposition that the Government is entitled to double damages without a showing of reliance. Rather, the court specifically found that the defendant's claim that the government was aware of the fraud was merely conclusory and did not set forth specific facts showing that there was a genuine issue for trial. 460 F.Supp. at 973; *see* Fed.R.Civ.P. 56(e).

The Government's reliance on *Dinerstein* is likewise misplaced. The fraudulent claims provision of the Contract Settlement Act, 41 U.S.C. § 119, provides for three types of recovery for false claims presented to the government: (1) a $2,000 forfeiture, *see* discussion *supra;* (2)a forfeit of the payment received "as a result" of the false claim; and (3) "double the amount of any damage which the United States may have sustained by reason" of the false claim. In *Dinerstein*, the Second Circuit, distinguished the "as a result" standard from the "by reason of" standard and held that the "as a result" standard did not require a showing of reliance or causation, but noted that the "by reason of" standard *did* require reliance. 362 F.2d at 856 & n.5. Of course, *Dinerstein* is not controlling in the instant case since *Dinerstein* does not specifically refer to the False Claims Act. We feel constrained to give it considerable weight, however, because it reflects the Second Circuit's interpretation of identical language.

lent, or fictitious or knowing the same to contain or to be based on any false, fraudulent, or fictitious statement or entry, ... (1) shall pay to the United States an amount equal to 25 per centum of any amount thereby sought to be wrongfully secured or obtained but not actually received, and (2) shall forfeit and refund any such benefit, payment,

compensation, allowance, loan, advance, and emolument received as a result thereof and (3) shall in addition pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit.

Moreover, assuming *arguendo* that reliance is not necessary, it does not necessarily follow that the Government has proved causation. Rapoport's position, in essence, is (1) that the Government did not rely on the false statement, and that after it learned of it, directed that the loan be closed, and (2) that this conduct bars it from recovery under either a proximate cause or contributory negligence analysis. Whether Rapoport will prevail on these arguments, of course, is a matter for the fact finder.[10]

The Third Circuit's decision in *United States v. Hibbs, supra,* appears to be directly on point. *Hibbs* involved a real estate broker who had falsely certified to the Federal Housing Authority ("FHA") that the plumbing, electrical, and heating systems of six Philadelphia houses satisfied HUD regulations. The FHA had issued mortgages for these six houses and subsequently honored its commitment when the mortgagors defaulted. The district court found that the Government was entitled to the $2,000 forfeiture for each of the houses plus double damages for its payments to the mortgagee. The defendant did not contest the forfeiture, but appealed on the ground that the district court awarded double damages although it specifically found that there was no causal connection between the false certifications and the defaults. A divided Third Circuit panel reversed, holding that the "by reason of" language in the Act:

> compels consideration of the element of causation. [It] should be liberally construed so as to provide the government restitution from those whose fraud has caused loss. It should not, however, be disregarded completely so as to eliminate the relationship between the unlawful act and the injury ultimately sustained.

568 F.2d at 351.

The dissent did not quarrel with the general notion that the Government must establish a nexus between the unlawful act and the damages it seeks to recover. The

dispute was over what act constituted the "unlawful act." The majority considered the false certification of the condition of the houses to be the unlawful act, *id.,* whereas the dissent argued that the claim that the FHA honor its credit insurance obligation was the illegal act. The false certification, according to the dissent, was merely a *cause* of the false claim and was not the appropriate measure of whether the United States incurred damages "by reason of" the defendant's illegal act. *Id.* at 353–54; *see United States v. McNinch, supra.*

The Act must "be construed to mean what it says." *United States v. Hughes,* 585 F.2d 284, 287 (7th Cir. 1978). While both the interpretation of the majority and that of the dissent in *Hibbs* find support in the statute and case law, we consider the reasoning of the dissent to be too technical and opt for the simplicity of the majority's position. The Act provides for the recovery of double damages incurred "by reason of" the commission of an *act.* The *act* that Rapoport, as well as the defendant in *Hibbs,* committed was causing false information to be submitted on an application for a government loan guarantee. The proper inquiry is whether the government incurred damage "by reason of" Rapoport's causing false information to be stated on the loan application. To inquire merely whether the government incurred damage because it honored its loan guarantee strips the statutory "by reason of" restriction of any real significance.

Applying this standard to the case at bar, the Court concludes that a material issue of fact remains concerning whether the Government has established causation. Accordingly, the motion to grant summary judgment with respect to double damages is denied. For the reasons stated above, summary judgment is granted with respect to the $2,000 forfeiture.

SO ORDERED.

---

10. This being a motion for summary judgment, we characterized the facts in the light most favorable to Rapoport. *See United States v.* *Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).