**UNITED STATES of America ex rel. Robert N. LUTHER, Plaintiff,**

v.

**CONSOLIDATED INDUSTRIES, INC., Thor Systems, Columbus Sanders, and A, B, C, D, E and F, Defendants.**

Civ. A. No. CV89–PT–0101–S.

United States District Court, N.D. Alabama, S.D.

Sept. 12, 1989.

George C. Batcheler, Asst. U.S. Atty., Frank W. Donaldson, U.S. Atty., for N.D. Ala., Birmingham, Ala., Michael F. Hertz, Dept. of Justice, John R. Bolton, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D.C., and Robert Salcido, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

John J. Callahan, Jr., and Howell R. Riggs, Jr., Bell Richardson & Sparkman, Huntsville, Ala., Joel R. Feidelman, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., Alan M. Grayson, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This matter is before the court on defendants' Motion to Dismiss or for Summary Judgment and Award of Attorneys' Fees and Expenses filed on May 25, 1989. The court understands the facts to be as follows.

This is a civil *qui tam* action under 31 U.S.C. § 3730(b)(1) and § 3729(a)(2) brought by the Relator, Robert N. Luther, against the defendants, Consolidated Industries, Inc., Thor Systems, Columbus Sanders, and fictitious parties, A, B, C, D, E and F.[1]

Robert N. Luther was Director of Engineering at Consolidated Industries, Inc., ("CII"). Mr. Luther named this division Thor Systems. Thor Systems was awarded two contracts with Teledyne Brown Engineering ("Teledyne"), which were in fact two subcontracts under government prime contracts.

Luther prepared and submitted invoices to Teledyne. The Defense Contract Audit Agency ("DCAA") conducted an audit of Teledyne's contracts and found some discrepancies. Defendants contend that Luther submitted "bogus invoices" and billed for engineers' and scientists' time at rates that exceeded their actual earnings. Luther contends that nothing in the invoices submitted *by him* is false, fraudulent or bogus. Due to the discrepancies, Teledyne cancelled its contracts with CII.

Defendants now move to dismiss or for summary judgment because the relator did

---

1. The reference to fictitious parties is a nullity. The Government has elected, after notice, not to proceed with this action.

not allege that the Government actually paid or approved a false or fraudulent claim. Defendants argue that there cannot be recovery under the False Claims Act unless the claim was paid or approved.

### False Claims Act

The False Claims Act was enacted after a series of sensational Congressional inquiries unearthed numerous instances of defense contractor fraud against the Union Army during the Civil War. The law was meant to punish such practices as the mixing of gunpowder with sawdust. Wall, *False Claims Reform Act*, 60 WISC.B. BULL. 16 (Oct. 1987). "The chief purpose ... was to provide for restitution to the government of money taken from it by fraud." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943). "To achieve this, the statute reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White*, 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1967).

The False Claims Act was amended by the "False Claims Amendments Act of 1986," Pub.L. No. 99–562, § 2, 100 Stat. 3153 (codified as amended at 31 U.S.C. §§ 3729–33) (1986). The amendments' purposes were to deter Government fraud through increased civil penalties and damages; to unify judicial interpretations of the Act's liability standard; and to stimulate private citizen assistance in halting government fraud through *qui tam* actions.

Under the former Act, a defendant found liable was required to pay double the damages incurred by the United States because of the defendant's conduct, in addition to a forfeiture of $2,000 for each violation of the Act. The 1986 amendments, however, require the payment of treble damages and the forfeiture of not less that $5,000 and not more than $10,000 for each violation of the Act. Additionally, for the first time in the Act's history, the 1986 amendments provide definitions of the terms "knowing" and "knowingly" and expressly state that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b). Whether this description of the standard of liability is viewed as a "clarification" or as an outright change in the law, it is clear that the 1986 amendments affect the cases in [the Eleventh Circuit], which had held that an intent to deceive of defraud the Government is a discrete element of False Claims act liability. [Citations omitted]. *United States v. Hill*, 676 F.Supp. 1158, 1163 (N.D.Fla.1987).

\*    \*    \*    \*    \*    \*

The deletion of the "specific intent to defraud" requirement now brings less culpable conduct within the ambit of the law. *Id.* at 1170.

The *qui tam* amendments encourage more private citizen participation through such provisions that allow the private plaintiff to take a more active role if he so chooses (31 U.S.C. § 3730(c)(1)) and for an increased recovery if the suit is successful (31 U.S.C. § 3730(d)).

The pertinent part of the 1986 amended Act reads as follows:

§ 3729(a) Liability for certain acts—

Any person who—

(2) knowingly makes, uses or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government; ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more $10,000, plus three times the amount of damages which the Government sustains....

31 U.S.C. § 3729(a)(2).

### CLAIM UPON OR AGAINST GOVERNMENT

■ A false claim is actionable although the claims or false statements were made to a party other than the Government, if the payment of the claim would ultimately result in a loss to the United States. S.Rep. No. 345, 99th Cong.2d Sess. 10, *reprinted in* 1986 U.S. CODE CONG. & ADMIN. NEWS 5266, 5275.

In *U.S. v. Lagerbusch,* 361 F.2d 449 (3rd Cir.1966), Lagerbusch made false representations to his employer, Hercules Powder Co., a private company which was a government contractor. The United States paid or reimbursed Hercules for all operating costs, including the fraudulent claims. The court ruled, "We have no doubt that the False Claims Act covers such an indirect mulcting of the government." *Lagerbusch,* 361 F.2d at 449.

In *U.S. v. Douglas,* 626 F.Supp. 621 (E.D. Va.1985), one of the defendants submitted a false report with regard to flying time of Navy pilots during the making of the film, "The Final Countdown." The court ruled, "Nor does it matter that the filmmakers did not directly deal with the government as far as the allegedly false report is concerned," *Douglas,* 626 F.Supp. at 626. The court cited *Lagerbusch* as authority.

In *Murray & Sorenson, Inc. v. United States,* 207 F.2d 119 (1st Cir.1953), a purchasing agent conspired with government contractors to submit false claims to the Navy. The False Claims Act was held to apply. "The fact that the claims in this case were not presented directly to the government, but were made to it indirectly through the contractors, does not prevent recovery under the False Claims statute." *Murray & Sorenson,* 207 F.2d at 123. *See also* Annotation, *When is Claim "Upon or Against the United States" so as to Sustain Civil Liability Under False Claims Act,* 59 A.L.R.Fed. 886 (1982).

■ Therefore, even though false claims in this case were presented to Teledyne, and not the government directly, a claim was submitted "upon or against the government" under the False Claims Act.

### Statutory Forfeiture

■ "It is well settled that the Government can recover the forfeiture without proving any damages." *United States v. Rapoport,* 514 F.Supp. 519, 523 (S.D.N.Y. 1981). *See United States v. Hughes,* 585 F.2d 284 (7th Cir.1978); *Fleming v. United States,* 336 F.2d 475 (10th Cir.1964), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965); *Toepleman v. United*

*States,* 263 F.2d 697 (4th Cir.1959), *cert. denied,* 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1939).

In the district court trial of *Hess,* 41 F.Supp. 197 (W.D.Pa.1941), *aff'd,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), the evidence showed that payments were withheld on the discovery of fraud. The court awarded the penalty even though no damages were sustained. The court ruled that the False Claims Act

... expressly provides for a penalty of $2,000, 'and, in addition, double the amount of damages which the United States may have sustained.' This makes it plain that regardless of damages sustained, the United States would still be entitled to recover the penalty. This point refers to instances where the United States withheld payments on account of the discovery of fraud, so that no actual damage was shown. However, that would not preclude the United States from recovery of the penalty...."

*Hess,* 41 F.Supp. at 218.

In *United States v. Killough,* 848 F.2d 1523 (11th Cir.1988), the defendants were state officials in charge of a temporary housing program, which was created in the aftermath of Hurricane Frederic. The program was funded by the Federal Emergency Management Agency ("FEMA"). The defendants were guilty of soliciting kickbacks from contractors in exchange for awarding them contracts. To generate money for the kickbacks, the contractors inflated the invoices they submitted.

The court quoted the legislative history: "4. Even if no payment was made on a claim or the government cannot prove actual damages, a forfeiture shall be awarded on each false claim *submitted.*" (Emphasis added). *Killough,* 848 F.2d at 1533, *quoting* S.Rep. No. 615, 96th Cong., 2d Sess. at 2n.

Under the False Claims Act, the United States may recover "from a person who presents a false claim or causes a false claim to be presented to it a forfeiture...." *United States v. Lawson,* 522 F.Supp. 746, 749 (D.N.J.1981).

In *United States v. Dinerstein*, 226 F.Supp. 368 (E.D.N.Y.1964), *aff'd in part, rev'd in part*, 362 F.2d 852 (2d Cir.1966), the Government brought an action pursuant to the fraudulent claims provision of the Contract Settlement Act, 41 U.S.C. § 119, which bears a close resemblance to the False Claims Act. The district court, referring to the False Claims Act in support of its ruling that reliance is not necessary to the assessing of the $2,000 forfeiture of the Contract Settlement Act, noted that the $2,000 forfeiture provision of the False Claims Act applies "even in cases in which the United States seems to have discovered the fraud before making payment and thus not to have been either effectively deceived or pecuniarily damaged." The False Claims Act, "literally read, would afford the Government a distinct civil remedy for the threat to its funds notwithstanding that loss was averted by the vigilance of the occasion." *Dinerstein*, 226 F.Supp. at 371. The Second Circuit did not comment on this particular proposition on appeal; however, it did agree with the district court's basic proposition that no reliance is necessary to recover the forfeiture. *Dinerstein*, 362 F.2d at 855. The *Rapoport* court followed the *Dinerstein* decision, and granted the Government summary judgment with respect to the forfeiture. *Rapoport*, 514 F.Supp. at 524.

In *United States v. Hibbs*, 568 F.2d 347, 350 (3rd Cir.1977), the court stated, "it has been held that the making of a false certificate alone, does not entitled the government to the statutory forfeiture. There must have been a payment." The court cited *United States v. McNinch*, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958) and *United States v. Tieger*, 234 F.2d 589 (3rd Cir.1956) for that proposition. In *McNinch* and *Tieger*, however, the focus was primarily on the issue of whether or not a "claim" had been presented. Both cases deal with fraudulently procured government-insured loans in which a default had not yet occurred. *McNinch* and *Tieger* do not directly address the issue of a penalty. Mr. Justice Douglas, in his dissent in *McNinch*, noted that a claim had been presented for approval within the meaning of the Act.

"It is of course contingent until a default occurs. But when fraudulent, it presents an effort to 'cheat the United States,' (quoting *Hess*, 317 U.S. at 544 [63 S.Ct. at 384])." *McNinch*, 356 U.S. at 602, 78 S.Ct. at 954.

The *Hill* case, *supra*, was a fraudulent loan case decided after the 1986 amendments. In *Hill*, the defendants were charged with conspiracy to defraud the United States by making or using false statements or documents in applications for federal loan guarantees. The court noted that liability is imposed upon an individual who *submits* a false statement to the government.

Therefore, under the language of the statute, and supporting case law, the civil penalty of not less than $5,000 and not more than $10,000 may be awarded based upon the knowing submission of a false claim. The "imposition of forfeitures under the Act is not discretionary, but is mandatory for each claim found to be false." *Killough*, 848 F.2d at 1533.

### Treble Damages

■ In contrast to the forfeiture provision, the plaintiff must show actual damages before treble damages can be awarded. "To recover damages, it must be shown that the United States sustained damages by reason of the false claim." *Lawson*, 522 F.Supp. at 750 (D.N.J.1981). Proof of reliance or that false statements induced action is indispensable to the recovery of damages. *Dinerstein*, 226 F.Supp. at 371. It would appear that Teledyne cancelled the contracts before any money was paid. If this is true, there was no injury and no *damages*, treble or otherwise, would be recoverable. The court will, however, not grant summary judgment on this issue at this stage since the issue of the penalty will still be open.

■ The evidence, as to plaintiff's role and/or the roles of others in submitting the claims, is conflicting and the court cannot resolve those conflicts as a matter of law. *If* this action is an unjustified retributive

step in a vendetta, that can be dealt with later.

## CONCLUSION

A false claim submitted to a government contractor is, in effect, submitted "upon or against" the United States for the purposes of the False Claims Act. Furthermore, the Government does not have to actually pay or approve a false claim for there to be recovery under the Act. Once an individual knowingly *submits* a false claim for payment or approval, that individual is liable for a forfeiture of not less than $5,000 and not more than $10,000. The other issues will remain open.

The defendants' Motion to Dismiss or for Summary Judgment and Award of Attorney's Fees will be denied.